STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth WEBSTER, Defendant-Appellant.†

Court of Appeals

*No. 89-1604-CR. Submitted on briefs March 6, 1990.—Decided May 1, 1990.*

(Also reported in 458 N.W.2d 373.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *William J. Chandek* of Brookfield, Wisconsin.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Michael R. Klos,* assistant attorney general, of Madison.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   Kenneth Webster appeals from a judgment of conviction for delivery of a controlled substance—cocaine, party to a crime. *See* secs. 161.16(2)(b)1, 161.41(1)(c)3, and 939.05, Stats. Three issues are presented for review: (1) whether the trial court abused its discretion by admitting the hearsay statement of an alleged coconspirator, Le'Mon Fitzgerald Ward into evidence; (2) whether the state violated Webster's state and federal constitutional confrontation rights by failing to produce Ward at trial; and, (3) whether the trial court erred by denying Webster's pretrial motion to suppress his confession. We conclude Ward's statement was admissible under sec. 908.01(4)(b)5; that Webster's confrontation rights were not impaired in light of *United States v. Inadi,* 475 U.S. 387 (1986); and that Webster's confession was made voluntarily. Therefore, we affirm.

The facts are, for the most part, undisputed. On November 29, 1988, Milwaukee County Sheriff's Detective Kevin Carr, operating under cover, arranged with Ward to purchase one-half kilogram of cocaine for $12,000. Carr had no dealings or conversation with Webster prior to his arrest, nor did Ward specifically mention Webster to Carr.

In the early evening of November 29th, Webster and Ward drove to a parking lot located at North 35th Street

and West Juneau Avenue in Milwaukee. Upon arriving at the lot, Webster purchased a package of cigarettes at a drugstore.

By prearrangement with Ward, Carr arrived at the lot and parked near Ward's vehicle. Ward waived for Carr to drive near him. Window-to-window, Carr and Ward exchanged greetings. Carr testified: "He [Ward] told me that his man went right across the street to get the package and he would be right back, or words to that substantial effect." Ward advised Carr that his man would bring the package to him and instructed Carr to wait. Carr moved his vehicle away from, but within sight of, Ward and then observed Webster get into Ward's vehicle. Ward then delivered the cocaine to Carr.

At this time, Detective Carr signaled ten surveillance officers who moved in for the arrest. Carr assisted in Ward's arrest and observed Webster flee the scene. Pursued by several deputies with drawn guns, Webster collided with a vehicle on Juneau Avenue. He injured his leg but continued to flee. A deputy apprehended Webster and he was placed under arrest. He was taken to the Milwaukee County Safety Building where he admitted that, after purchasing the cigarettes, he stopped at a white Cadillac Seville in the parking lot, picked up the cocaine, and delivered it to Ward in his vehicle.

## I.

## ADMISSION OF WARD'S STATEMENT

Webster argues that the trial court abused its discretion by admitting Ward's statement into evidence because it was prejudicial hearsay. On appeal, we will affirm the trial court's admission of evidence if it is a proper exercise of discretion. *State v. Sorenson,* 143 Wis.

2d 226, 240, 421 N.W.2d 77, 82 (1988). This requires the trial court to correctly apply accepted legal standards to the facts of record, and to reach a reasonable conclusion by a demonstrated rational process. *See id.* The state contends that Ward's statement was not hearsay pursuant to sec. 908.01(4)(b)5, Stats.[1] Webster, citing *State v. Dorcey,* 103 Wis. 2d 152, 157, 307 N.W.2d 612, 615 (1981), argues that at least a *prima facie* case of conspiracy must be made before a coconspirator's statement is admissible.[2] He contends that the state failed to meet this burden of proof.

In *Dorcey* the supreme court held that the conspiracy upon which the admissibility of the statement depends must be proven independently of the hearsay statement itself, lest the hearsay statement bootstrap itself to the level of competent evidence. *Dorcey,* 103 Wis. 2d at 158, 307 N.W.2d at 615 (citing *Glasser v. United States,* 315 U.S. 60, 75 [1942]).[3] Furthermore,

---

[1]Section 908.01(4)(b)5, Stats., provides that a statement is not hearsay if it "is offered against a party" and is a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy." *See also* Fed. R. Evid. 801(d)(2)(E).

[2]In *State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 428, 351 N.W.2d 758, 765 (Ct. App. 1984), we stated that a conspiracy commences when: (1) two or more people agree to act for the accomplishment of a criminal purpose; (2) each coconspirator intends to accomplish the criminal purpose; and (3) each coconspirator has an individual stake in the conspiracy.

[3]We note that *Glasser* is no longer controlling federal law. In *Bourjaily v. United States,* 483 U.S. 171 (1987), the Supreme Court ruled that a court may rely on the statements of alleged conspirators to determine whether a conspiracy exists and concluded that *Glasser* has been superseded by Fed. R. Evid. 104(a) and 1101(d)(1). *See also* secs. 901.04(1), Stats. (in determining admissibility trial judge bound only by rules of evidence governing privileges) and 911.01(4)(a), Stats. The State argues that *Dorcey*

because the statute refers to a statement during the course and in furtherance of the conspiracy, its beginning and end must be established. *Id.*

We reject Webster's argument because Webster's admissions,[4] coupled with Detective Carr's observations at the buy-bust scene, amply establish the *prima facie* existence of a conspiracy. After his arrest, in an interview room in the Safety Building, Webster told an officer that on the afternoon of November 29th, he and Ward made arrangements for the sale of the cocaine; that Ward advised him that a person named "Tony" was the source of the cocaine; and that "Tony" gave instructions that the pickup of the package would be made from a man named "Jim," who would be in a white Cadillac Seville parked in a lot on 35th Street. Webster was to purchase a package of cigarettes at a drug store, pick up the package of cocaine from Jim in the Seville, and then deliver it to Ward. Webster also admitted that he carried out these directions.

Detective Carr's observations corroborate Webster's narrative. He observed Ward's vehicle and the white Seville on the lot that was to be the delivery place. He also observed a person, who turned out to be Webster, walk to and enter Ward's vehicle. Ward then got out of

admissibility trial judge bound only by rules of evidence governing privileges) and 911.01(4)(a), Stats. The State argues that *Dorcey* should no longer control here. However, we need not address this issue because our determination that a *prima facie* case of conspiracy has been established in this case is dispositive. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938). Thus, as we did in *State v. Blalock,* 150 Wis. 2d 688, 702–04, 442 N.W.2d 514, 519–20 (Ct. App. 1989), we decline to address this issue in the context of the case before us.

[4]Our discussion is based on our conclusion that Webster's admissions were voluntary. *See infra* part III.

his vehicle, walked over to Carr, and delivered the cocaine.

This evidence establishes, without Ward's statement, a *prima facie* conspiracy to deliver cocaine from the planning of the crime to the delivery. Furthermore, the statement in question was a critical part of the transaction. It was clearly made during the course of and in furtherance of the conspiracy. Thus, Ward's statement, testified to by Carr, is not hearsay as provided by sec. 908.01(4)(b)5, Stats. The trial court did not abuse its discretion in admitting the statement.

## II.

## CONFRONTATION[5]

Webster argues that his right to confrontation was violated by the admission of Ward's statement because Ward was available[6] to testify and because the statement lacked any indicia of trustworthiness. He contends that

[5]The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . .." Article I, Section 7 of the Wisconsin Constitution provides, in part: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face . . .."

The provisions of the Sixth Amendment are applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403 (1965). Also, the federal and state provisions are effectively the same. *State v. Martinez,* 150 Wis. 2d 62, 75 n.6, 440 N.W.2d 783, 788 n.6 (1989).

[6]Webster's trial occurred March 6 and 7, 1989. Ward had pled guilty February 21, and was in custody awaiting sentencing set for March 24.

his right to confront and cross-examine his accuser was defeated by admission of the statement. The state concedes that the admissibility of evidence under state evidentiary rules does not *ipso facto* constitute compliance with confrontation rights. *California v. Green,* 399 U.S. 149, 155–56 (1970); *State v. Bauer,* 109 Wis. 2d 204, 210, 325 N.W.2d 857, 860–61 (1982).

We reject Webster's position and hold that the state and federal constitutions do not require a showing of unavailability as a condition to admission of a coconspirator's statement made in the course and in furtherance of the conspiracy. *See United States v. Inadi,* 475 U.S. 387, 394–96 (1986). We further hold that independent indicia of reliability are not required by either constitution as a condition to receipt of the statement. *See Bourjaily v. United States,* 483 U.S. 171, 182 (1987).

We start the analysis with *Ohio v. Roberts,* 448 U.S. 56 (1980). In *Roberts* the Supreme Court determined that the statement of a declarant who does not testify at trial generally may be admitted only if the declarant is not available and the statement contains certain indicia of reliability. *Id.* at 65–66. Relying on *Roberts,* this court in *State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 430, 351 N.W.2d 758, 766 (Ct. App. 1984), decided that reliability of a statement can be inferred if it falls within a firmly rooted hearsay exception. If it does, then the trial court must additionally examine each case to determine whether unusual circumstances exist warranting exclusion of the statement. *Id.*

The state argues that this case should be governed by *Inadi,* and we agree. In *Inadi* the Court noted that the *Roberts* unavailability rule was historically applied to prior testimony, 475 U.S. at 392–94, and that the precedential underpinnings of the rule do not support the proposition that the state may not introduce an out-of-

court statement without first establishing declarant unavailability. *Id.; see Bourjaily,* 483 U.S. at 182. Ordinarily, a live witness, on display before the jury and subject to cross-examination, serves the purposes of confrontation far better than another witness's rendition of his statement. *See Inadi,* 475 U.S. at 394. This, however, is not true in the case of a declarant coconspirator. *Id.* at 395. We agree with the Court's reasoning in *Inadi:*

> Those same principles do not apply to co-conspirator statements. Because they are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court. When the Government—as here—offers the statement of one drug dealer to another in furtherance of an illegal conspiracy, the statement often will derive its significance from the circumstances in which it was made. Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand. Even when the declarant takes the stand, his in-court testimony seldom will reproduce a significant portion of the evidentiary value of his statements during the course of the conspiracy.

*Id.* at 395.[7]

The *Inadi* court further observed that the unavailability rule is not one of exclusion. If the declarant is

---

[7]Webster argues that the *Inadi* rationale cannot be applied to this case because, unlike *Inadi,* the statement here was made to an undercover police officer, not a coconspirator. We disagree. At the time Ward made the statement in question, he believed Carr was a drug purchaser. As we discuss, *infra,* Ward's statement to Carr was an integral part of the transaction, the focus of the conspiracy. The *Inadi* rationale is relevant.

unavailable, or available and produced by the state, the statement is admitted. *Id.* at 396. The evidence is excluded only if the state fails to produce an available declarant. *Id.* Also the availability rule adds virtually nothing to the truth-determining process. *Id.* An available witness, not subpoenaed by either party, presumably has no evidence to offer. *Id.* at 396–97. A rule requiring the state to make such a witness available advances neither the cause of the state nor the presentation of the defense. *Id.* at 397. Thus, such a rule would require the state to consume its resources to produce witnesses who presumably have no additional evidence to offer. *See id.* at 397–98.

■ Applying these concepts to the case at hand, the Ward statement was related to the most crucial part of the conspiracy—the delivery. At stake was a $12,000 purchase of cocaine, having a street value, according to the evidence, ranging from $50,000 to $200,000 depending to what extent it was cut. Ward believed Carr was a purchaser. The Byzantine method of delivery was calculated to insulate the upper echelon of the drug-trafficking hierarchy from arrest. Here the white Cadillac Seville drove away from the buy-bust, and as of the time of the trial its occupants had not been apprehended. Carr's knowledge of the mechanics of the delivery was crucial to the success of the transaction. Ward's statement was more than an out-of-court declaration, it was a vital part of the event. We are unable to discern how Ward's presence at trial would contribute anything of evidentiary value. If there were any value to his presence, Ward's in-custody status made him as available to Webster as to the state. We therefore conclude that the state's failure to make Ward available under the circum-

stances did not violate Webster's confrontation rights provided by the state and federal constitutions.

Webster argues that Ward's statement lacks indicia of reliability because evidence in the case failed to cast him in the role of a conspirator,[8] thereby preventing Ward's statement from falling within a firmly-rooted hearsay exception. He argues that because of this, the statement can be admitted only if it presents a particular guaranty of trustworthiness. Webster insists such a guaranty cannot exist here because the nefarious nature of the delivery is not a circumstance calculated to guaranty trustworthiness. Furthermore, he argues, even if reliability could be inferred, an unusual circumstance exists that warrants its exclusion. *See Bauer,* 109 Wis. 2d at 215, 325 N.W.2d at 863. This alleged circumstance was Webster's failure to hear Ward's statement to Carr which prevented him from responding to its accuracy or contents.

We reject Webster's arguments. The evidence established Webster's status as a star actor, the pickup man, in the chain of delivery. Ward's statement was part and parcel of the crime to which Webster was a party. Since the statement was part of the delivery, it is substantive evidence as provided by the statute. Webster's failure to be personally present at the time of the statement is not an "unusual circumstance" because the complaint, filed more than three months before the trial, contained the statement. He had sufficient time to react to its accuracy and contents in his preparation for trial.

■

Webster's argument is meritless, primarily because Ward's statement, made in the course and in furtherance

---

[8]At trial, Webster testified that he did not participate in the pickup.

of the conspiracy, simply is not hearsay. It was part of the crime. In *Bourjaily* the Supreme Court stated:

> The admissibility of co-conspirators' statements was first established in this Court over a century and a half ago in *United States v. Gooding*, 12 Wheat. 460 (1827) (interpreting statements of co-conspirator as *res gestae* and thus admissible against defendant), and the Court has repeatedly reaffirmed the exception as accepted practice.

*Bourjaily*, 483 U.S. at 183. We conclude that as a statement of a coconspirator, Ward's statement falls within a firmly-rooted hearsay exception as a matter of law. *See Bauer*, 109 Wis. 2d at 213, 325 N.W.2d at 862. Thus, its reliability can be inferred without a showing of particular indicia of reliability. *See id.*

Accordingly, we hold that the statement of a coconspirator that is not hearsay as provided by sec. 908.01(4)(b)5, Stats., may be admitted into evidence without proof of the declarant's unavailability, *see Inadi*, 475 U.S. at 400, and without a showing of particular indicia of reliability, *see Bourjaily*, 483 U.S. at 182-84. However, the trial court must examine the case to determine whether unusual circumstances exist that would warrant exclusion of the statement. *Curbello-Rodriguez*, 119 Wis. 2d at 430, 351 N.W.2d at 766. Even if unusual circumstances do exist, the evidence will still be admissible "if the trier of fact has a reasonable basis for evaluating the truthfulness of the prior statement." *Id.* (citing *Bauer*, 109 Wis. 2d at 213-14, 325 N.W.2d at 862).

## III.

## WAIVER OF RIGHTS

Webster contends that the trial court erred by denying his motion to suppress his confession because the waiver of his Fifth Amendment rights[9] was not voluntary. *See State v. Clappes,* 136 Wis. 2d 222, 235–36, 401 N.W.2d 759, 765 (1987). Webster complains that the deputies pressured him to make a statement, allegedly by refusing to secure medical assistance for his leg injury. He argues that pain clouded his ability to rationally decide whether or not to make a statement. This denial of medical treatment, Webster asserts, when coupled with a twenty-minute wait for the interrogation that lasted about thirty minutes, rendered his statement involuntary.

Upon review of this issue, we will not disturb trial court findings of evidentiary or historical fact unless they are contrary to the great weight and clear preponderance of the evidence. *Clappes,* 136 Wis. 2d at 235, 401 N.W.2d at 765 (1987). We review questions affecting application of the federal constitution to historical facts independently of the trial court. *Id.*

As to the admissibility of Webster's confession, we assess its voluntariness by inquiring whether the deputies improperly pressured him to make a statement and thereby caused his inculpatory statements not to be the product of his free and unconstrained will, reflecting his

---

[9] "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 8 (1964); *see also* Wis. Const. art. I, sec. 8(1).

deliberate choice. *Id.* at 236, 401 N.W.2d at 765. This requires further inquiry as to whether the pressure imposed upon Webster exceeded his ability to resist. To resolve these matters we look to the totality of the facts and circumstances surrounding the admissions. *Id.* This, in turn, focuses upon a balance of Webster's personal characteristics against the pressure the deputies used to induce his statements. *Id.* at 236, 401 N.W.2d at 766.

The trial court found that after his arrest, the deputies advised Webster of his *Miranda* rights, and that he understood them; that after fifteen minutes into the interrogation he pulled up his trouser leg and showed the interrogating officer a 2-1/2 inch abrasion on his left leg; that he requested no medical attention at that time, nor did he tell the interrogating officer that he was in pain. The trial court found that Webster sustained the injury before his arrest when he ran into a police vehicle as he was attempting to flee, and that he got up and ran further. The trial court further found that he was examined after the interrogation by a nurse who found a superficial abrasion. The trial court found Webster's statements to be voluntary.

An examination of the record reveals ample evidence in support of the trial court's findings. Particularly, the testimony of a registered nurse employed by the sheriff's department buttresses the trial court's evidentiary findings. She examined Webster about 8:40 p.m. after his interrogation and found a superficial abrasion on his left leg. She cleansed the area with hydrogen peroxide and bandaged it. She gave him a standard dose of Tylenol for his complaint of pain.

In light of these facts, which are not contrary to the great weight and clear preponderance of the evidence, we conclude that Webster's Fifth Amendment rights were

524

not violated and that his confession was made voluntarily.

*By the Court.*—Judgment affirmed.