STATE of Wisconsin, Plaintiff-Respondent,

v.

Pamela RUNDLE, Defendant-Appellant.

Court of Appeals

*No. 91-1203-CR. Submitted on briefs October 22, 1991.—Decided January 8, 1992.*

(Also reported in 480 N.W.2d 518.)

On behalf of the defendant-appellant the cause was submitted on the brief of *Bernard Goldstein* of Milwaukee.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

ANDERSON, J.   Pamela Rundle appeals from her conviction on three counts of physical child abuse and an order denying her motion for postconviction relief. On appeal she raises four issues. First, she argues that her conviction for both intentional child abuse and reckless child abuse violates the double jeopardy provisions of the federal and state constitutions. Second, she claims that the trial court erred in admitting diagnostic portions of hospital records. Third, she contends that she was prejudiced by the admission of an overwhelming amount of *Whitty*-type evidence.[1] Finally, she maintains that she was prejudiced when the trial court denied Kurt Rundle's motion for severance.

We conclude that reckless child abuse causing great bodily harm is not a lesser included offense of intentional child abuse causing bodily harm. Under the facts of this case, we hold that the counts involve distinct forms of conduct or different elements and are not multiplicitous. Although the trial court erred in admitting the medical staff's impressions, suspicions and diagnosis, the error was harmless and did not contribute to Pamela's conviction. We also conclude that the admission of *Whitty*-type evidence was not in error. Finally, we decide that Pamela was not prejudiced when the trial

---

[1] *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967), *cert. denied,* 390 U.S. 959 (1968).

court denied Kurt's motion for severance. Therefore, we affirm Pamela's convictions for child abuse.

## I. Facts

Pamela Rundle and Kurt Rundle, the parents of K.R., born January 23, 1986, were charged in a joint information with multiple counts of child abuse. Pamela, along with Kurt, was charged in count one with being a party to the crime of intentionally causing bodily harm to K.R. between July 24 and August 6, 1989, while being responsible for the welfare of K.R. Sections 948.03(2)(b), 948.03(5) and 939.05, Stats. Pamela and Kurt were charged in count two with being a party to the crime of recklessly causing great bodily harm to K.R. between July 24 and August 6, 1989, while being responsible for the welfare of K.R. Sections 948.03(3)(a), 948.03(5) and 939.05. Finally, Pamela was charged in count three with child abuse on or about October 13, 1988, in violation of sec. 940.201, Stats. (1987–88).

The charges were triggered when K.R. was admitted in a comatose condition to Milwaukee Children's Hospital on August 6, 1989. The admitting and treating medical staff diagnosed K.R. as suffering from a subdural hematoma caused by repetitive and acute shaking (Shaken Baby Syndrome) within seven days of K.R.'s admission; and the medical staff also observed a substantial number of scratches and bruises, from several hours to two weeks old, that could not have been caused accidentally. The medical staff reported its findings to the Kenosha County Department of Social Services which began an investigation.

During an interview with a social worker, Kurt and Pamela admitted that on July 30, 1989, Pamela picked K.R. up and threw K.R. in the hallway of their home.

720

The Rundles also told the social worker that on August 3 or 4, Pamela disciplined K.R. by striking the child in the face, kicking her and dragging her until she fell. Along with the diagnosed and observed injuries, these statements served as the basis for the joint criminal complaint issued against Pamela and Kurt.

During her initial appearance Pamela's counsel joined in Kurt's objections to counts one and two as being multiplicitous and requested that the trial court require the district attorney to select a single theory of the prosecution. The trial court held that the counts were not multiplicitous because each involved different degrees of injury.

At a later pretrial hearing the trial court denied a motion by Kurt's counsel to sever Kurt's charges from those issued against Pamela. Pamela did not join in Kurt's motion or file her own motion for severance.

After a joint trial the jury returned verdicts convicting Pamela of all three counts. The trial court imposed a ten-year prison term on count one; a consecutive five-year term on count two; and on count three imposed and stayed a two-year prison term and placed Pamela on probation for five years consecutive to counts one and two.

The trial court denied postconviction relief to Pamela. The trial court held that Pamela was not denied a fair trial by its refusal to sever Kurt's case from her case. The court further held that there was no error in the admission of portions of K.R.'s hospital and medical records. Finally, the court held that the separate charges of intentional child abuse and reckless child abuse were supported by evidence of conduct and injuries that occurred over a period of time.

## II.  Double Jeopardy

### A.  Lesser Included Offense

In ascertaining whether one crime is a lesser included offense of another, a court is concerned only with the legal elements of the crimes and not with the evidence introduced at trial.[2] *Randolph v. State,* 83 Wis. 2d 630, 640, 266 N.W.2d 334, 339 (1978). Thus, the question of whether a crime is a lesser included offense of another crime is a question of law which we will review independently without deference to the reasoning of the trial court. *See State v. Williquette,* 129 Wis. 2d 239, 247, 385 N.W.2d 145, 149 (1986).

In Wisconsin the "elements only" test is the accepted methodology for evaluating whether a crime is a lesser included offense, unless sec. 939.66, Stats., prescribes another method. *State v. Martin,* 156 Wis. 2d

---

[2]The genesis of Pamela's argument is an awkwardly prepared criminal complaint. For the enumeration of the facts establishing probable cause to support count two (reckless conduct causing great bodily harm) the state incorporates by reference the facts relied upon to establish probable cause in support of count one (intentional conduct causing bodily harm). Pamela argues that because the state relies on the same facts to support probable cause for both counts, count two must be a lesser included offense of count one. Although we note that the use of "incorporation by reference" in drafting criminal complaints is not the preferred method to adequately establish the reasons a defendant is charged with the crime specified, *cf. State v. Adams,* 152 Wis. 2d 68, 73–74, 447 N.W.2d 90, 92 (Ct. App. 1989), Pamela cannot take solace in this cumbersome complaint because the resolution of whether one crime is a lesser included offense of another crime hinges on the statutory elements of each crime and not the facts set forth in the criminal complaint.

399, 403, 456 N.W.2d 892, 894 (Ct. App. 1990), *aff'd,* 162 Wis. 2d 883, 470 N.W.2d 900 (1991). In using this methodology, a lesser included offense is defined as a "crime which does not require proof of any fact in addition to those which must be proved for the crime charged." *Id.* When conviction of the lesser crime mandates proof of an element that is not essential to conviction of the crime charged, the lesser crime is *not* a lesser included offense. *Id.*

Pamela was charged under both subsecs. 948.03(2)(b) and 948.03(3)(a), Stats. These two subsections of sec. 948.03 provide:

> **(2) Intentional causation of bodily harm.**
> . . ..
> (b) Whoever intentionally causes bodily harm to a child is guilty of a Class D felony.
> **(3) Reckless causation of bodily harm.** (a) Whoever recklessly causes great bodily harm to a child is guilty of a Class D felony.

Section 939.66(3), Stats., provides that a crime which requires recklessness is a lesser included offense of one that requires intent. However, it is not applicable in the case of these two subsections for reasons discussed below. We will employ the "elements only" methodology.

These two subsections have different legal elements which preclude reckless child abuse from being a lesser included offense of intentional child abuse: the degree of injury suffered by the victim. Under sec. 948.03(2)(b), Stats., the victim must suffer only *bodily* harm while under sec. 948.03(3)(a), the victim must suffer *great bodily* harm. These different degrees of injury are defined in sec. 939.22, Stats.:

723

(4) "Bodily harm" means physical pain or injury, illness, or any impairment of physical condition.

. . ..

(14) "Great bodily harm" means bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury.

The element of the degree of injury for each crime is different. Conviction of reckless child abuse causing great bodily harm requires proof of serious permanent or protracted injuries, an element that does not have to be proved to secure a conviction for intentional child abuse causing bodily harm; therefore, we hold that the former is not a lesser included offense of the latter.[3]

## B.   Multiplicity

Pamela asserts that the two counts violate the double jeopardy prohibition against charging the same conduct in two or more counts. Again relying on the criminal complaint, she argues that the same conduct is used to sustain both counts and the complaint is therefore multiplicitous.

---

[3]Pamela attempts to bolster her arguments on multiplicity and lesser included offenses with an incomprehensible reference to the trial court's reception of the jury's verdicts. The court did misread the verdicts when they were announced in open court; however, the jury was properly instructed on each count of the information and returned correctly worded verdicts. Pamela's argument is without merit.

Pamela's argument is too simplistic and ignores the fundamental concepts of multiplicity. Generally, there can be a conviction for more than one offense if each count is based on *different conduct;* or, if multiple counts are based on the *same conduct,* each offense requires proof of a different fact. *Harrell v. State,* 88 Wis. 2d 546, 555, 277 N.W.2d 462, 465 (Ct. App. 1979) (referencing Remington and Joseph, *Charging, Convicting and Sentencing the Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 545). The *Harrell* court went on to address situations, such as the one presented in this case, where dissimilar forms of criminal conduct occur during a sequence of events:

> "[W]hen different crimes are committed, each may be prosecuted separately although all form part of one transaction or sequence of events. Crimes are different when the evidence necessary to establish one differs from the other . . .. The prohibition against double jeopardy does not apply when two separate and distinct crimes are committed in the same transaction or series of related acts, even though the crimes are so closely connected in point of time that it is impossible to separate the evidence relating to them."

*Id.* at 555–56, 277 N.W.2d at 465 (quoting 1 *Wharton's Criminal Law and Procedure,* secs. 32 and 145 (Anderson ed. 1957)).

Pamela is charged with two distinct forms of conduct occurring between July 24 and August 6, 1989, that are not so entwined that it is infeasible to segregate the evidence of intentional conduct causing bodily harm from the evidence of reckless conduct causing great bodily harm.

725

■ Additionally, the two forms of conduct which Pamela is charged with require separate facts for proof. "Intentional conduct" is defined as the mental purpose to cause bodily harm or the awareness that the conduct was practically certain to cause bodily harm. Wis J I—Criminal 2109. "Reckless conduct" is defined as conduct which creates a situation of unreasonable risk of harm to the child and demonstrates a conscious disregard for the safety of the child. Wis J I—Criminal 2111. We conclude that counts one and two are not multiplicitous because they charge separate categories of criminal conduct even though that conduct occurred during the same time frame.[4]

### III.  Evidentiary Issues

Pamela raises two evidentiary issues in this appeal. First, she argues that prejudicial error was committed by the trial court when it permitted the state to read excerpts of K.R.'s medical records to the jury. Second, she asserts that she was prejudiced by the admission of *Whitty*-type evidence.

■ On appeal, we will affirm the trial court's admission of evidence if the court has properly exercised its discretion. *State v. Webster,* 156 Wis. 2d 510, 514, 458 N.W.2d 373, 374–75 (Ct. App. 1990). In the exercise of its discretion the trial court must accurately apply accepted legal

---

[4]Because we have concluded that the two counts do not relate to the same conduct, we do not have to address *Harrell's* "two-prong" test that examines whether each count requires proof of a different fact than the other count and what the legislative intent is as to the allowable unit of prosecution. *Harrell v. State,* 88 Wis. 2d 546, 554–55, 277 N.W.2d 462, 464–65 (1979).

standards to the facts of record, and demonstrating a rational process, it must reach a reasonable conclusion. *Id.* at 515, 458 N.W.2d at 375.

## A. Medical Records

During the course of the trial the state read portions of medical records pertaining to the admissions of K.R. to various hospitals. Before the state introduced the medical records under sec. 908.03(6m), Stats., Pamela objected on the grounds that the reading of the records to the jury would deny her the right to confront the medical personnel who had made the entries in the medical records. The trial court overruled Pamela's objections and permitted the state to read fragments of K.R.'s medical records to the jury.

On appeal Pamela argues that the trial court erred in allowing the state to read the medical records in that it violated her right to confrontation; diagnostic portions of the records were read; medical and scientific terms were not explained to the jury; certain medical records were irrelevant; and, portions of certain records were cumulative.

Pamela's principal complaint is that the admission of the hospital records violated her confrontation rights.[5] While acknowledging that *Hagenkord v. State,* 100 Wis. 2d 452, 302 N.W.2d 421 (1981), is controlling, she argues that the inclusion of diagnostic entries in the material read to the jury and the failure to call an expert to explain medical terms violated her confrontation rights.

Pamela misreads *Hagenkord* as requiring an explanation of medical terms to avoid a violation of her con-

---

[5]Pamela concedes that all of the hospital records were properly authenticated under the procedures outlined in sec. 908.03(6m), Stats.

frontation rights. *Hagenkord* stands for nothing more than that an individual may qualify as an expert witness, under sec. 907.02, Stats., if the only purpose of his or her proposed testimony is to explain or decipher substantive evidence that is already before the jury. *See Hagenkord* at 463, 302 N.W.2d at 427. Whether or not substantive evidence is explained to the jury is far removed from the issue of Pamela's confrontation rights.

*Hagenkord* involved a challenge to the use of hospital records on the grounds that the defendant's confrontation rights were violated because the writers of the records were not available for cross-examination by the defendant. After considering whether hospital records were entitled to be an exception to the hearsay rule and whether the requirements of the confrontation clause were satisfied by the introduction of hospital records, the supreme court concluded:

> We hold only that hospital records bear such an unusual indicia of reliability and trustworthiness that, in circumstances where the *evidence is clinical and nondiagnostic* and there is no articulated reason that there is any inaccuracy or irregularity in the entries in the record, such records satisfy the confrontation clause.

*Id.* at 478, 302 N.W.2d at 434 (emphasis added).

*Hagenkord* does not define "clinical and nondiagnostic" evidence. However, "clinical and nondiagnostic" evidence can be defined as the objective findings of medical personnel, for example, temperature, x-ray results, and lab test results. Generally, "clinical and nondiagnostic" evidence is any information that would not be disputed by trained medical personnel. Also included would be statements of the patient/victim

728

describing the source of the injury and giving an evaluation of the injury. *State v. Olson,* 75 Wis. 2d 575, 591-92, 250 N.W.2d 12, 20-21 (1977). The patient/victim's statements can be classified as "clinical and nondiagnostic" for two reasons. First, the patient/victim's strong motivation for proper treatment will insure trustworthiness of the information provided to medical staff. *See State v. Nelson,* 138 Wis. 2d 418, 435, 406 N.W.2d 385, 392 (1987), *cert. denied sub nom., Nelson v. Farrey,* 493 U.S. 1042 (1990). Second, any medical staff transcribing the statements would have been found qualified to do so and would have strong motivation to prepare them accurately because of professional dictates and the fact that others will rely upon the work. *See Olson,* 75 Wis. 2d at 592, 250 N.W.2d at 21.⁶

Excluded from "clinical and nondiagnostic" evidence are the impressions, opinions, conclusions and diagnoses of the medical staff. *See State v. Leis,* 134 Wis. 2d 441, 448-49, 397 N.W.2d 498, 501-02 (Ct. App. 1986). These subjective findings of the medical staff are based on their interpretation of the "clinical and nondiagnostic" information contained in the medical records.

Applying this definition to the medical records read to the jury, we conclude that the trial court committed error in allowing the state to relate to the jury the medical staff's impressions, suspicions and diagnoses. Pamela

⁶This definition of "clinical and nondiagnostic" evidence, as including all objective medical findings and the statements of the patient/victim, conforms to the *Hagenkord v. State,* 100 Wis. 2d 452, 302 N.W.2d 421 (1981), requirement that in order to be able to sustain an attack on the use of hospital records in trial, a defendant must be able to articulate an inaccuracy or irregularity in the record.

was not given the opportunity to confront and cross-examine medical staff to challenge their opinions and the basis for their opinions, to explore their qualifications, or to search for any possible bias or prejudice.

The error in this case was a constitutional error because Pamela was deprived of her opportunity to confront those witnesses who diagnosed K.R.'s injuries as being caused by physical child abuse or Shaken Baby Syndrome.

> Constitutional error is considered harmless if the court can declare the belief that it was harmless beyond a reasonable doubt because there is no reasonable possibility that the error contributed to the conviction.

*State v. Stark,* 162 Wis. 2d 537, 548, 470 N.W.2d 317, 321 (Ct. App. 1991).

After reviewing the entire record in this case we are convinced beyond a reasonable doubt that the erroneous admission of the medical staff's diagnosis and impressions did not contribute to Pamela's conviction. Statements Pamela gave to social workers investigating K.R.'s injuries, along with independent evidence presented during the trial, are sufficient to support the conviction.[7]

---

[7]Because we conclude that the admission of medical diagnoses and impressions was harmless constitutional error, we will not address the other errors Pamela alleges the trial court made in admitting portions of the medical record into evidence.

## B. *Whitty*-Type Evidence

Pamela challenges the admission of evidence of other crimes, acts or wrongs, charging that she was prejudiced by evidence of Kurt's abuse of K.R. and by evidence that suggested she had engaged in uncharged acts of physical child abuse.

One portion of the evidence that Pamela criticizes involves evidence of a charge that Kurt physically abused K.R. in 1986. This evidence was introduced by the state as direct evidence against Kurt and not in an attempt to prove that Pamela acted in conformity with Kurt's conduct in 1986. We cannot envision how Pamela, having failed to seek severance of her case from Kurt, can now seek to assert that she was prejudiced when evidence relating solely to Kurt was introduced during the trial. Pamela also failed to object during the trial when evidence relating solely to Kurt was introduced and she has waived any complaint she may have. Section 901.03(1)(a), Stats.

Pamela also failed to object to what she characterizes as *Whitty*-type evidence introduced relating to her. Even if she had properly preserved this objection, we would hold that the evidence was admissible as substantive evidence of the three counts of physical child abuse and was necessary to permit the jury to fully understand the context of the charges against Pamela. *See State v. Shillcutt,* 116 Wis. 2d 227, 236–37, 341 N.W.2d 716, 720 (Ct. App. 1983), *aff'd,* 119 Wis. 2d 788, 350 N.W.2d 686 (1984).

## IV. Severance

Pamela complains that she was denied her right to a fair trial when the trial court did not grant Kurt's motion for severance under sec. 971.12, Stats. Pamela never joined in Kurt's motion and did not take that opportunity to show how a joint trial would be prejudicial to her. Additionally, she did not make her own motion for severance. Pamela waived any claim of prejudicial joinder by failing to particularize the reasons for severance in the trial court. *State v. King,* 120 Wis. 2d 285, 293, 354 N.W.2d 742, 746 (Ct. App. 1984).

*By the Court.*—Judgment and order affirmed.