State of Wisconsin, Plaintiff-Respondent,
v.
Timothy P. Zoellick, Defendant-Appellant.
No. 03-2341-CR.
Court of Appeals of Wisconsin.
Opinion Filed: March 24, 2004.
¶1. BROWN, J.[1]
Timothy P. Zoellick appeals from a judgment of conviction for two counts of disorderly conduct, contrary to Wis. Stat. § 947.01, for walking past the alleged victim in a parking lot and repeatedly driving past her home. Zoellick now seeks reversal of the conviction based on the assertion that, as a matter of law, the disorderly conduct statute cannot apply to such "innocuous" conduct. Based on our supreme court's decision in State v. Schwebke, 2002 WI 55, 253 Wis. 2d 1, 644 N.W.2d 666, cert. denied, 537 U.S. 1090 (U.S. Wis. Dec. 16, 2002) (No. 02-6140), we hold that the disorderly conduct statute can apply to such conduct where there is a real possibility that his or her disturbance will spill over and cause a threat to the surrounding community. We also conclude that (1) the complaint set forth a factual basis sufficient to support the crimes charged, (2) the evidence adduced at the jury trial was sufficient to sustain the guilty verdict as to both counts of disorderly conduct, (3) the trial court correctly suppressed inculpatory statements Zoellick had made during the investigative stop leading to his arrest, and (4) the trial court properly admitted testimony from the alleged victim concerning Zoellick's pattern of conduct. We affirm.
¶2. The pertinent facts are as follows. In March 2002, the State charged Zoellick with two counts of stalking for incidents occurring on December 29 and December 31, 2001. The State later amended this complaint. After the court dismissed this amended complaint, the State filed its third and final amended complaint in January 2003, charging Zoellick with two counts of disorderly conduct.
¶3. The third amended complaint alleged that on December 31 at approximately 10:40 a.m., Deputy Paul Preissner of the Calumet County Sheriff's Department responded to a suspicious vehicle complaint, which was reported by Maren Bisbee. Maren stated that she had observed a vehicle drive by the Bisbee residence twice that morning. Id. She believed the vehicle was driven by the person who was stalking her mother, Linda Bisbee. Preissner was unable to locate the vehicle in the area at that time. Then, at approximately 11:52 a.m., Maren once again contacted the sheriff's department about a suspicious vehicle. This time, Preissner located and stopped the suspect vehicle, making contact with the driver, Zoellick. The complaint states that when Preissner spoke with Zoellick, he "was very evasive about why he was in the area."
¶4. The complaint alleges that Gerald A. Pagel, an investigator with the Calumet County Sheriff's Department, responded to assist Preissner with the stop. Upon his arrival, Pagel asked Zoellick why he was in the area. The complaint alleges that in response, Zoellick made inculpatory statements, including that he had driven past the Bisbee residence on three separate occasions on that particular day and that he was also in the area on December 29. Zoellick indicated to Pagel that he had gone to school with Linda and admitted that he had driven past her residence in the past while she was living in other cities. Zoellick informed Pagel that he had not attempted to personally make contact with Linda, but admitted that "he has made attempts to always learn where she is living."
¶5. The complaint also references a report submitted by Pagel, who met with Linda and her husband Douglas Bisbee on February 2. Linda indicated that she had known Zoellick for approximately twenty-five years, having gone to school with him. Both Douglas and Linda stated that they had observed a vehicle driving past their residence on a regular basis since June of the previous year. The Bisbees indicated that on December 29, they were at a restaurant and observed the same vehicle drive past the restaurant and turn around. As they were leaving the restaurant, Zoellick walked towards them and watched them get into their vehicle.
¶6. Zoellick challenged the sufficiency of this complaint, arguing that his conduct did not constitute disorderly conduct because he did not do "anything to provoke a disturbance other than being in the presence of the alleged victims." The trial court denied Zoellick's motion to dismiss.
¶7. Prior to the jury trial, Zoellick filed a motion to suppress the incriminating statements he made to Pagel during the December 31 Terry[2] stop. Zoellick argued that at the time of the stop, he was in custody and interrogated without having been Mirandized.[3]
¶8. At the motions hearing, Pagel testified that on December 31, 2001, he was asked to assist Preissner in the investigation of a stalking allegation in the area. He further testified that he arrived at the scene only "a few seconds" after the stop was made. He testified that Zoellick was in the back seat of the squad car, but was not handcuffed, when he arrived. After discussing the situation with Preissner, Pagel opened the door to the squad car and asked Zoellick if it would be okay if he spoke with him. Zoellick told Pagel that "it would be fine" and Pagel got in the car and sat next to Pagel. Pagel informed Zoellick that he was not under arrest or otherwise in custody and the he was conducting a Terry stop. Pagel testified that he did not have his gun drawn and the door to the squad car was open at all times. Pagel then testified about Zoellick's inculpatory statements. He testified that Zoellick stated that he had been driving past Linda's home "to let her know that he is in the area." Zoellick also told Pagel that he had engaged in similar conduct when the Bisbees had lived in Minnesota and other areas of Wisconsin. Based on Pagel's testimony, the trial court denied the motion. The court concluded that Zoellick was not in custody and his statements were made voluntarily.
¶9. Thereafter, the State filed a motion to allow the introduction of "other acts" evidence. The State sought to introduce evidence of Zoellick's alleged stalking of four other women in Wisconsin and of his alleged twenty-five year history of stalking Linda. The trial court disallowed the stalking evidence as to the other four victims and limited the testimony to that of Linda. Prior to ruling upon the admissibility of the pattern of conduct between Zoellick and Linda, the court required voir dire of Linda on the day of the trial. Following her testimony, the court ruled that the "pattern of behavior" of Zoellick was relevant, as it impacted Linda, and the court allowed only the portions of Linda's testimony where she was able to point to a specific documented instance or where she could specify the approximate date and time of the conduct.
¶10. At trial, Linda testified to the twenty-five year history between Zoellick and herself. She testified that beginning in 1976, when she was in the eighth grade in Watertown, Zoellick would follow her around school. This continued on into high school where Zoellick would follow her from one class to another, when she left her house, through stores and throughout the community. Zoellick did not cease his behaviors despite Linda's request that he leave her alone. Linda testified that upon graduation from high school, she and her husband moved to Moorhead, Minnesota to attend college. While they lived in Minnesota, Zoellick continued to show up at least two times a year in person and to call her residence on numerous occasions. As a result, Linda called the police and had her phone disconnected. The Bisbees tried to move from Moorhead without the knowledge of Zoellick, but Zoellick showed up on moving day and so the Bisbee's left town under the cover of night. Linda testified that Zoellick continued his pattern of behavior when they moved to Dubuque, Iowa. According to Linda, his behavior made it difficult for them to visit their parents in Watertown because he would follow them wherever they went.
¶11. Linda further testified that when they moved to Wisconsin Rapids in 1988, his continued contacts led to a restraining order. Zoellick, however, violated court orders on at least ten occasions, including the same day the restraining order was issued. Linda testified that Zoellick's conduct left her feeling disturbed, frightened and that the fear and disturbance now extended to her children. She also stated that on December 29 and 31, Zoellick's behavior did cause a disturbance, that she feared for her children's safety and that her daughter had become frightened.
¶12. Douglas also testified at the trial. He indicated that he has been familiar with Zoellick's conduct since the 1970s and had observed the same behaviors as his wife. He also described the impact the incidents of December 29 and 31 had on his wife and daughter. He testified that it upset them both, making them feel insecure and threatened.
¶13. Following a one-day trial, the jury convicted Zoellick of both counts of disorderly conduct. Zoellick appeals.
¶14. We begin by addressing Zoellick's claims that the complaint failed to set forth essential facts constituting the offenses charged and that the evidence presented at trial was insufficient to sustain the guilty verdicts. His appeal, however, presents more than these simple questions. Instead, the underlying issue is whether, based on the facts, the disorderly conduct statute can, as a matter of law, apply to Zoellick's conduct. Zoellick contends that the "Wisconsin Supreme Court has repeatedly held that mere presence in a public place, absent conduct tending to cause or provoke a disturbance does not constitute disorderly conduct." Thus, according to Zoellick, it follows that his presence at a restaurant and driving down the street "cannot in and of themselves constitute otherwise disorderly conduct."
¶15. Our three-step analytical framework for addressing Zoellick's arguments is as follows. First, we will address Zoellick's arguments pertaining to whether the disorderly conduct statute can be applied to his behavior. Second, we will examine whether the complaint set forth sufficient facts to constitute disorderly conduct. Third, we will consider whether the evidence presented at trial was sufficient to convict him on both counts.
¶16. Wisconsin Stat. § 947.01 states as follows: "Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." The State must prove two elements to convict a defendant under this statute. State v. Douglas D., 2001 WI 47, ¶15, 243 Wis. 2d 204, 626 N.W.2d 725. First, it must prove that the defendant engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud, or similar disorderly conduct. Id. Second, it must prove that the defendant's conduct occurred under circumstances where such conduct tends to cause or provoke a disturbance. Id. An objective analysis of the conduct and circumstances of each particular case must be undertaken because what may constitute disorderly conduct under some circumstances may not under others. See State v. A.S., 2001 WI 48, ¶33, 243 Wis. 2d 173, 626 N.W.2d 712.
¶17. In Schwebke, 253 Wis. 2d 1, ¶30, our supreme court discussed whether the disorderly conduct statute encompasses conduct that does not implicate the public directly, but rather tends to cause a disturbance or disruption that is personal or private in nature. There, Schwebke was charged with fourteen counts of disorderly conduct arising from mailings and telephone calls directed at four individuals. Id., ¶2. On appeal, Schwebke asserted that such personal and private annoyance is insufficient to support a conviction of disorderly conduct. Id., ¶25. Schwebke claimed that the supreme court had traditionally upheld disorderly conduct convictions where there had been a threat to public order or public peace. Id., ¶28. The court rejected his argument, explaining:
We certainly agree with Schwebke that, from our jurisprudence, the statute is appropriately applied in instances where conduct, under the circumstances, has a tendency to provoke a disruption to the public peace, public safety, or public order or is likely to cause a reaction from the community based on the fact that the public peace, public order, or public safety is being threatened. We conclude, however, that the disorderly conduct statute does not necessarily require disruptions or disturbances that implicate the public directly. The statute encompasses conduct that tends to cause a disturbance or disruption that is personal or private in nature, as long as there exists the real possibility that this disturbance or disruption will spill over and disrupt the peace, order or safety of the surrounding community as well. Conduct is not punishable under the statute when it tends to cause only personal annoyance to a person. See Douglas D., 2001 WI 47, ¶27. An examination of the circumstances in which the conduct occurred must take place, considering such factors as the location of the conduct, the parties involved, and the manner of the conduct.
Schwebke, 253 Wis. 2d 1, ¶30. Based on this analysis, the court concluded that the disorderly conduct statute was appropriately applied to Schwebke's conduct. Id., ¶32. The court explained that in each instance, the conduct at issue, in light of the circumstances, went beyond conduct that merely tended to annoy or cause personal discomfort in another person and was disruptive to peace and good order in the community. Id. The court reasoned that the mailings caused other friends and relatives and coworkers to become concerned for the safety of the victims and that the conduct necessitated the involvement of the police. Id.
¶18. Applying Schwebke to this case, we conclude that the disorderly conduct statute was appropriately applied to Zoellick's conduct. As Schwebke teaches, the disorderly conduct statute does not require that the defendant's conduct directly implicate the public. Rather, the statute applies to conduct that is personal or private in nature, as long as there exists "the real possibility that this disturbance will spill over and disrupt the peace, order or safety of the surrounding community as well." Id., ¶31. Here, as in Schwebke, Zoellick's conduct, in light of the circumstances, went beyond conduct that merely tended to annoy or cause personal discomfort to another person and was of the type that tended to be disruptive of the community itself. The disturbing nature of Zoellick's conduct toward Linda caused Linda's husband and child to fear for their own and Linda's safety. Furthermore, such conduct necessitates the involvement of the police, who were contacted on more than one occasion, and the entire judicial system.
¶19. Zoellick also contends that "the statute does not and cannot punish a person for conduct possibly offensive to a hypersensitive individual." Rather, according to him, the standard to be applied is that of an objectively reasonable person and we may not consider the context in which Zoellick's behavior occurred. This argument runs directly contrary to the majority's holding in Schwebke. As Schwebke tells us, in determining the applicability of the disorderly conduct statute, we are to look to "the circumstances in which the conduct occurred ... considering such factors as the location of the conduct, the parties involved and the manner of the conduct." Id., ¶30. Thus, it is entirely appropriate for us, and the trial court, to view Zoellick's conduct in the context in which it occurred-a twenty-five year history of obsessive behavior. It follows that the standard to be applied is that of a reasonably objective person aware of the surrounding circumstances.
¶20. Further, although Zoellick concedes that Schwebke holds that the disorderly conduct statute can, in some circumstances, apply to a disturbance that is personal or private in nature, he nevertheless extols the virtues of the dissent in Schwebke. There, Chief Justice Shirley S. Abrahamson wrote:
The court seems to be moving the disorderly conduct statute back to the laws of the 1950s and 1960s that gave law enforcement officers and prosecutors broad discretion to arrest and prosecute people. Those laws are characterized as "so broad that they `legally' authorize the police to arrest virtually anyone."
Id., ¶53 (Abrahamson, J., dissenting). Regardless of how strong and persuasive Zoellick believes the dissent to be, the majority opinion is the one that binds us and drives our conclusion.
¶21. Finally, Zoellick argues that the State's application of the disorderly conduct statute to his conduct renders the statute unconstitutionally overbroad. He maintains that "the record reveals that [the constitutional] issues were raised, and ruled upon by the trial court." Zoellick, however, fails to provide a cite to the record substantiating his claim. We have painstakingly paged through the record and have found no evidence that Zoellick raised the overbreadth claim before the trial court. We have repeatedly held that we will not consider an issue raised for the first time on appeal, especially a claim that a statute is unconstitutional. See Tomah-Mauston Broadcasting Co., Inc. v. Eklund, 143 Wis. 2d 648, 657-58, 422 N.W.2d 169 (Ct. App. 1988). We, therefore, decline to address Zoellick's constitutional challenge.
¶22. Having established that the disorderly conduct statute may be applied to Zoellick's conduct, we now turn to the question of whether the complaint in this case set for the facts constituting disorderly conduct. A criminal complaint is a self-contained charge that must set forth facts within its four corners that are sufficient, in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and the defendant is probably culpable. State v. Haugen, 52 Wis. 2d 791, 793, 191 N.W.2d 12 (1971); State v. Hoffman, 106 Wis. 2d 185, 197, 316 N.W.2d 143 (Ct. App. 1982). To be sufficient, a complaint must be only minimally adequate. This is to be evaluated in a commonsense, rather than a hypertechnical, manner in setting forth the essential facts establishing probable cause. State v. Gaudesi, 112 Wis. 2d 213, 219, 332 N.W.2d 302 (1983). The sufficiency of a complaint is a matter of law and is addressed de novo by the reviewing court. See, e.g., id. at 219-21.
¶23. Here, the allegations in the third amended complaint were sufficient to establish probable cause that Zoellick had committed the offense. The complaint describes Zoellick's twenty-five history of contacting Linda, his conduct towards Linda and her family on December 29 and 31 (walking past her in a parking lot and repeatedly driving past her home) and the disruption it caused Linda and her family. The complaint further indicates that his conduct necessitated the involvement of both the police more than once and of the judicial system. This is sufficient to satisfy the minimal requirements for a complaint.
¶24. We now turn to Zoellick's claim that the evidence was insufficient to support his conviction on both disorderly conduct counts. The State bears the burden of proving all elements of a crime beyond a reasonable doubt. State v. Sartin, 200 Wis. 2d 47, 53, 546 N.W.2d 449 (1996). We may not reverse a conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). If any possibility exists that the jury could have drawn the appropriate inferences from the trial evidence to find guilt, we may not overturn the verdict. Id. at 507.
¶25. Based on the evidence, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on both counts. Again, the elements in this case required (1) otherwise disorderly conduct, which must be similar to the conduct enumerated in the statute in having a tendency to disrupt good order and (2) under circumstances that tended to cause or provoke a disturbance. Schwebke, 253 Wis. 2d 1, ¶41.
¶26. In Schwebke, the court held that a reasonable trier of fact could have concluded that Schwebke's mailings constituted disorderly conduct. Id., ¶¶42-44. If sending mailings from a remote location can constitute disorderly conduct, then given the twenty-five year context in which his conduct occurred, Zoellick's presence at the restaurant and his repeatedly driving past her residence most certainly could lead a rational jury to the conclusion that Zoellick was guilty of disorderly conduct.
¶27. Zoellick's conduct, when looked at in the context of his pattern of behavior over twenty-five years, shows an obsessive interest at the least. His appearance and conduct in the parking lot at the restaurant and his repeated driving by the home two days later exemplified the extent of his obsession. Such conduct has the tendency to disrupt the peace, safety and good order because, as Linda's testimony demonstrates, his contact was unwelcome and abusive in nature. Further, under such circumstances, his conduct was likely to cause or provoke a disturbance because it caused concern from other members of her family and the community as a whole, including the police. We, therefore, hold that the evidence was sufficient to convict Zoellick on the charges.
¶28. We next address Zoellick's contention that because he was subject to custodial questioning when he made the incriminating statements to Pagel and he had not been Mirandized, the statements should have been suppressed. In reviewing a trial court's determination on a motion to suppress evidence, we accept the trial court's finding of historical fact unless they are clearly erroneous. See State v. Turner, 136 Wis. 2d 333, 343-44, 401 N.W.2d 827 (1987). However, whether a person is in custody for Miranda purposes is a question of law, which we review de novo. State v. Buck, 210 Wis. 2d 115, 124, 565 N.W.2d 168 (Ct. App. 1997).
¶29. An officer's obligation to administer Miranda warnings to an individual attaches only where there has been a restriction on the individual's freedom so as to render him or her "in custody." Stansbury v. California, 511 U.S. 318, 322 (1994). In determining whether an individual was in custody for purposes of Miranda, the court must consider the totality of the circumstances. State v. Gruen, 218 Wis. 2d 581, 593, 582 N.W.2d 728 (Ct. App. 1998). "The test is `whether a reasonable person in the [suspect's] position would have considered himself or herself to be in custody, given the degree of restraint under the circumstances.'" Id. (quoting State v. Swanson, 164 Wis. 2d 437, 446-47, 475 N.W.2d 148 (1991)). This determination depends on the objective circumstances, "not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury, 511 U.S. at 323.
¶30. We have held that the factors relevant in determining whether a suspect initially detained for a traffic stop is "in custody" for Miranda purposes include: the suspect's freedom to leave, the purpose, place and length of the interrogation and the degree of restraint. Gruen, 218 Wis. 2d at 594. When considering the degree of restraint, courts consider whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the defendant was restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved. Id. at 594-95.
¶31. Zoellick first argues that the trial court denied the suppression motion based upon its erroneous belief that a Terry stop never triggers Miranda. Zoellick misreads the record. Although the trial court did not expressly reference Miranda or Gruen, the court clearly considered several of the Gruen factors before denying the motion. Namely, the court noted that the detention only took a few minutes, the rear door of the squad car was open, Zoellick was not handcuffed and Zoellick was advised that he was not under arrest or in custody. Based on this assessment, the court concluded that "a reasonable person, under those circumstances, would not believe himself to be under arrest or in custody."
¶32. Zoellick next claims that the facts of this case resemble those in State v. Morgan, 2002 WI App 124, ¶17, 254 Wis. 2d 602, 648 N.W.2d 23, where we applied the Gruen factors and held that the defendant was in custody for Fifth Amendment purposes. Morgan, however, is easily distinguishable.
¶33. In Morgan, the officers had drawn their guns, the defendant was frisked and placed handcuffed in a squad car, four officers were involved and one of the officers had testified that the defendant could not leave during questioning. Morgan, 254 Wis. 2d 602, ¶17. Here, on the other hand, while Zoellick was placed in the backseat of the squad car, he was never handcuffed, neither Preissner nor Pagel ever drew their guns and the door to the squad car was left open.
¶34. Zoellick maintains that Pagel testified that he had "positioned himself so as to block Zoellick from departing during his questioning." The transcript, however, reveals just the opposite. Pagel testified that Zoellick could have left the car through the door Pagel opened if he had slid over and while he was speaking with Zoellick, he stood "half in" and "half out" of the car. Although he testified that at one point he did sit next to Zoellick, Pagel also testified that he informed Zoellick that he was not in custody and not under arrest prior to questioning him. Further, the detention was temporary and conducted in the vicinity of where Zoellick was stopped solely for the purpose of discerning why Zoellick was in the area. A reasonable person in Zoellick's position would not have considered himself or herself to be in custody under these circumstances. Accordingly, we conclude that the trial court correctly decided that Miranda warnings were not required and Zoellick's statements to Pagel were admissible.
¶35. Finally, we address Zoellick's contention that the trial court erred in admitting the "other acts" evidence regarding the pattern of conduct between Zoellick and Linda. Zoellick argues that the trial court failed to conduct the analysis for admissibility of "other acts" evidence required by State v. Sullivan, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).[4]
¶36. We will affirm the circuit court's decision to admit evidence if the court properly exercised its discretion. State v. Webster, 156 Wis. 2d 510, 514, 458 N.W.2d 373 (Ct. App. 1990). In exercising its discretion, the circuit court must apply accepted legal standards to the facts of record and, demonstrating a rational process, it must reach a reasonable conclusion. Id. at 515.
¶37. We reject Zoellick's argument that the trial court needed to perform a Sullivan-type analysis prior to ruling on its admission. Zoellick's characterization of Linda's testimony regarding his pattern of behavior towards Linda as "other acts" evidence is simply wrong. It was a question of relevance for the trial court. As we stated earlier, Schwebke requires the court to look at the circumstances under which the offending conduct occurred when determining the applicability of the disorderly conduct statute. Linda's testimony about her prior contacts with Zoellick merely put his conduct and her response to his conduct in context for the jury. It was relevant because it demonstrated why Zoellick's conduct went beyond mere personal annoyance and had the potential to disrupt the peace, safety and good order of the community. The trial court recognized as much and permitted the jury to consider the evidence only "on the issue of whether, under the circumstances, the defendant's conduct was disorderly." We find no reason to disturb the court's decision to admit the testimony for this limited purpose.
¶38. In sum, we hold that the disorderly conduct statute can be applied to Zoellick's conduct and based on the facts presented in this case, the complaint set forth the essential facts establishing probable cause to support the disorderly conduct charges and there was sufficient evidence adduced at trial to convict Zoellick on the charges. We also conclude that the trial court properly admitted both the statements Zoellick made to Pagel during questioning and Linda's testimony concerning Zoellick's pattern of behavior over the past twenty-five years. Accordingly, we affirm.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Terry v. Ohio, 392 U.S. 1 (1968).
[3] See Miranda v. Arizona, 384 U.S. 436 (1966).
[4] When considering the admissibility of "other acts" evidence, the trial court should begin with the State v. Sullivan, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998) analysis: (1) "Is the other acts evidence offered for an acceptable purpose under [Wis. Stat. §] 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?" Id. at 72. (2) "Is the other acts evidence relevant, considering the two facets of relevance set forth in [Wis. Stat. § ] 904.01?" Id. (3) "Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence?" Id. at 772-73.