STATE of Wisconsin, Plaintiff-Respondent,

v.

James R. GARRITY, Defendant-Appellant.

Court of Appeals

*No. 90–1600–CR. Submitted on briefs March 1, 1991.—Decided March 27, 1991.*

(Also reported in 469 N.W.2d 219.)

842

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Shellow, Shellow & Glynn, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Nettesheim, P.J., Scott and Anderson, JJ.

SCOTT, J.   James Garrity appeals from judgments of conviction for four counts of possession of drugs with intent to deliver and from an order denying his motion for postconviction relief. On appeal, Garrity contends that the state's failure to timely disclose exculpatory evidence deprived him of a fair trial. We agree; accordingly, we reverse the judgments and remand the cause to the circuit court for a new trial. Because of this reversal, we need only address two of Garrity's other issues on appeal. First, we hold that there was sufficient evidence

to bind Garrity over on the LSD-related charge. Second, we hold that Garrity was not impermissibly punished twice for a single offense.

On December 1, 1988, while attempting to serve arrest warrants upon Garrity, two law enforcement officers saw him and three other men apparently smoking marijuana in an apartment. The officers entered and ultimately arrested all the men. One of the officers saw a surgical glove containing a block of what appeared to be cocaine. Garrity was asked whose it was, and he replied that it was his. This statement was elicited without Garrity's having been given *Miranda* warnings. Garrity then began convulsing. A rescue squad took him to the hospital. Other officers arrived and discovered a paper bag containing, among other things, LSD and various papers, some having Garrity's name on them. The next day, at the hospital, a piece of cocaine was discovered in Garrity's bed.

Garrity was initially charged with three counts of possession of drugs with intent to deliver—one for the cocaine found in the apartment, one for the LSD and one for the marijuana (THC). The complaint was later amended to include an additional charge for the cocaine found in Garrity's hospital bed. Following a preliminary hearing, Garrity was bound over on all counts, and a jury trial was had.

During opening statements, Garrity's trial counsel told the jury that Garrity would testify and informed it that Garrity was an addict and previously had been convicted for a drug offense. During the state's case, one of the police officers testified on cross-examination that the paper bag also contained a money belt which mysteriously disappeared while the police were still present at the crime scene. This revelation came as a surprise to Garrity's counsel, who moved for a mistrial, arguing that

this evidence was exculpatory and should have been disclosed to him before trial. The circuit court concluded that the information should have been revealed, denied the mistrial motion, but granted a continuance of one day. When the trial resumed, the state finished its case and, as part of the defense's case, Garrity testified much to the same effect as the opening statement had envisioned. Garrity's testimony on cross-examination acknowledged that he did not remember telling the officer that the cocaine was his. The jury found Garrity guilty on all counts.

Following postconviction hearings on motions, the circuit court determined that the money belt evidence was exculpatory and, as such, should have been disclosed to the defense before trial. It further found that, had Garrity's trial counsel known of it before trial, his strategy might have been different. Nevertheless, the court concluded that the error was, in effect, harmless because "the trial would have resulted in the same result." The court denied the postconviction motions. This appeal followed.

Garrity first argues reversible error in the state's failure to timely disclose exculpatory evidence. We agree. We begin, however, by discussing the governing case law on this issue. The circuit court, in its holding, applied standards from two cases: *United States v. Bagley,* 473 U.S. 667 (1985), and *State v. Ruiz,* 118 Wis. 2d 177, 347 N.W.2d 352 (1984). We believe that the *Bagley* case has effectively modified the holding of *Ruiz;* accordingly, we conclude that the *Bagley* rule governs here.

Our discussion of the law governing prosecutorial failure to disclose exculpatory evidence must begin with *United States v. Agurs,* 427 U.S. 97 (1976), which *Ruiz* discusses at length. *See Ruiz,* 118 Wis. 2d at 187–92, 347 N.W.2d at 357–59. As the *Ruiz* court stated, "In deciding

whether the prosecution had a duty to turn over the allegedly exculpatory evidence, the Court [in *Agurs*] described three different situations of prosecutorial nondisclosure and found a different standard for each." *Id.* at 188, 347 N.W.2d at 357–58. "The first situation is where the undisclosed evidence shows that the prosecutor's case included perjured testimony and the prosecutor knew or should have known that fact. Such a conviction obtained through perjured testimony is 'fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Id.* at 188, 347 N.W.2d at 358 (quoting *Agurs,* 427 U.S. at 103). "The second situation . . . is where the defense makes a pretrial request for specific evidence which would tend to exculpate the defendant or reduce the penalty. In those circumstances . . . 'the failure to make any response is seldom, if ever, excusable.' " *Ruiz,* 118 Wis. 2d at 189, 347 N.W.2d at 358 (quoting *Agurs,* 427 U.S. at 106).

Since *Ruiz,* however, the United States Supreme Court has further modified the *Agurs* test. In *Bagley,* the Court, in a plurality opinion,[1] stated:

> We find the *Strickland [v. Washington,* 466 U.S. 668 (1984),] formulation of the *Agurs* test for materiality sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been

---

[1]Justice Blackman wrote the opinion of the Court and was joined in it by Justice O'Connor. Justice White concurred in the judgment and was joined in this concurrence by Chief Justice Burger and Justice Rehnquist. This concurrence explicitly agreed with the use of the *Strickland* test. *United States v. Bagley,* 473 U.S. 667, 685 (1985).

disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Bagley,* 473 U.S. at 682.

Because the *Ruiz* court made clear that it was implementing the rule of *Agurs,*[2] and because the *Agurs* rule concerns due process rights under the federal constitution,[3] we conclude that *Bagley* modifies the rule of *Ruiz* to the same extent as it modified *Agurs.* Hence, the standard of materiality we apply here is derived from *Bagley* rather than from *Ruiz.*[4]

We then begin with the law as articulated in *Bagley.* There, the Court stated that "[t]he holding in *Brady v. Maryland* [373 U.S. 83, 87 (1963)] requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.' " *Bagley,* 473 U.S. at 674. Similarly, our supreme court has stated that "[d]ue process requires the prosecutor to disclose all exculpatory evidence." *State v. Nerison,* 136 Wis. 2d 37, 54, 401 N.W.2d 1, 8 (1987) (citing *Bagley,* 473 U.S. at 675-76).

We first address the question of whether the money belt evidence was favorable to the accused. The state contends it was not. We disagree. According to the officers present at the time, the bag containing the

[2]"This court has applied the rule of *United States v. Agurs,* [427 U.S. 97 (1976),] on several occasions." *State v. Ruiz,* 118 Wis. 2d 177, 191, 347 N.W.2d 352, 359 (1984).

[3]*See United States v. Agurs,* 427 U.S. 97, 107 (1976).

[4]We note that the supreme court has utilized the *Bagley* materiality standard, but in a different context. *See State v. McCrossen,* 129 Wis. 2d 277, 294, 385 N.W.2d 161, 168, *cert. denied,* 479 U.S. 841 (1986).

848

money belt was left unattended for approximately thirty seconds, during which time the money belt disappeared. This situation was later investigated by a sheriff's department lieutenant who concluded that "unknown to any of the officers involved that another person was hidden in the apartment, possibly in the dark bedroom and this person may have been responsible for removing the money belt and contents and leaving the apartment undetected."[5]

The thrust of the state's argument concerning whether this evidence favors the accused is that "no reasonable jury could conclude that there ever was a phantom cash snatcher." The state, however, is not the arbiter of the weight and credibility of evidence. The jury was entitled to believe the lieutenant's conclusion, which is not patently incredible. If there were, then, another occupant in the room, unknown to police, who knew enough about the contents of the bag to take the money belt and slip away in as short a time as half a minute, there can be little question that such evidence favors Garrity's defense that the drugs were not his.

Nor are we persuaded by the state's alternative argument that, were there an unknown occupant whose bag it was, he or she would have taken the whole bag, and not just the money belt. While this surmise is plausible, we believe it at least equally plausible that this person believed that his or her chances of being apprehended while trying to escape unnoticed were great enough that it would be unwise indeed to be caught with the LSD.

Having determined the money belt evidence to be favorable to the accused, we turn now to the materiality

---

[5]The lieutenant was unavailable to testify; his report was read into the record.

prong of the *Bagley* test: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682.

In Garrity's case, of course, the evidence was disclosed to the defense before the trial ended. In its brief, the state "does not dispute the obvious proposition that to avoid the need for a new trial because of the failure to disclose exculpatory evidence, the evidence must be made available in time for the defendant to reasonably make use of it at his first trial." *See United States v. Pollack,* 534 F.2d 964, 973 (D.C. Cir.), *cert. denied,* 429 U.S. 924 (1976). The state, however, contends that Garrity "was advised about it in sufficient time to make full use of it when his guilt was initially litigated." While it is true that Garrity's counsel here had the opportunity to elicit testimony concerning the money belt, to cross-examine witnesses concerning it and to argue to the jury a theory reliant upon that evidence, we are unconvinced that, under these circumstances, the belated exposure sufficed to give Garrity's counsel a reasonable opportunity to make full use of it.

In a posttrial affidavit, Garrity's trial counsel averred that, based upon the pretrial information at his disposal, his trial strategy "included having Mr. Garrity testify and 'letting it all hang out.' Consequently, I promised the jury in my opening statement that Mr. Garrity would testify, and informed it that he was an addict who consumed all of his earnings in drugs and that he previously was convicted for the same type of offense for which he then was on trial." He further averred that:

> [h]ad the information contained in the District Attorney's sealed file been disclosed to me in a timely

manner prior to trial, my trial strategy would have been radically different. Among other things, I would not have had Mr. Garrity testify. We thus could have avoided the inherent prejudice resulting from admission of his alleged statement, the extent of his addiction, and the fact and nature of his prior convictions. As it turned out, however, I had no reasonable choice but to call Mr. Garrity to testify because I had already told the jury in my opening that he would testify.

The state's response to this affidavit is, largely, a challenge to its veracity. The state finds it "difficult to understand why" trial counsel would not have chosen to have Garrity testify if counsel had known about the money belt incident. We have far less difficulty in understanding this; had the defense been armed with evidence enabling it to make a cogent argument that the bag belonged to the person who spirited away the money belt, an argument which would have been reinforced by testimony from a sheriff's department lieutenant, the need for Garrity himself to testify would be markedly diminished, if not eliminated. We have no reason to challenge, therefore, trial counsel's averment that Garrity would not have testified, had the money belt evidence been known to the defense before trial.

■

We therefore must measure the materiality of this evidence by comparing the trial as it existed with a trial at which Garrity would not testify. Not only would the money belt evidence have provided the groundwork for a defense that the bag was not Garrity's, but, with Garrity not testifying, the jury would have learned of neither Garrity's past convictions, nor, more importantly, his statement concerning the ownership of the cocaine. Applying the *Strickland/Bagley* standard, we conclude

that there exists a reasonable probability that the result of the proceeding would have been different.[6] Accordingly, we reverse the judgments of conviction and remand the cause to the circuit court for a new trial.

However, we also must address Garrity's argument that there existed insufficient evidence to bind him over on the LSD count. With this contention, we do not agree. A defendant should be bound over if the hearing judge determines, after hearing the evidence, that a reasonable inference supports the probable cause determination. *State v. Dunn*, 121 Wis. 2d 389, 398, 359 N.W.2d 151, 155 (1984).

Here, the preliminary hearing testimony established that, of the four men in the apartment when police arrived, Garrity was the only one not wearing an overcoat. Further, the address on Garrity's driver's license was that for the apartment building in which he was found. From this, the court properly could infer that the paper bag present there was accessible to Garrity and under at least his joint dominion and control. *Cf. State v. Allbaugh*, 148 Wis. 2d 807, 814, 436 N.W.2d 898, 902 (Ct. App. 1989).[7]

---

[6] We are mindful of the statement in *State v. Ruiz*, 118 Wis. 2d 177, 194, 347 N.W.2d 352, 360 (1984), that stressed the importance of the trial court's evaluation of the newly discovered evidence. While the trial court here ultimately did conclude that the money belt evidence, timely disclosed, would not have changed the result, we note that the trial court was applying the *Agurs/Ruiz* standard, not the *Strickland/Bagley* standard.

[7] We are unpersuaded by Garrity's argument that this evidence constitutes "at best a speculative possibility that Garrity knew of the LSD and possessed it." The judge at a preliminary hearing may draw more than one reasonable inference in finding

Finally, we note that Garrity raises a multiplicity argument concerning the two cocaine charges, which argument we here comment upon in order to assist the circuit court upon remand. We are convinced that this issue is squarely governed by *State v. Stevens,* 123 Wis. 2d 303, 367 N.W.2d 788, *cert. denied,* 474 U.S. 852 (1985), and that the charges were not, therefore, multiplicitous.

*By the Court.*—Judgments and order reversed and cause remanded with directions.

---

probable cause. *See State v. Dunn,* 121 Wis. 2d 389, 397–98, 359 N.W.2d 151, 155 (1984).