STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles C. RAY, Defendant-Appellant.†

Court of Appeals

*No. 91–0463–CR. Submitted on briefs September 13, 1991.—Decided January 15, 1992.*

(Also reported in 481 N.W.2d 288.)

†Petition to review denied.

856

On behalf of the defendant-appellant the cause was submitted on the briefs of Charles C. Ray, *pro se,* of Waupun.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general and *Daniel J. O'Brien,* assistant attorney general.

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J. Charles C. Ray was convicted of conspiracy to deliver cocaine contrary to sec. 161.41(1)(c), Stats., and sec. 161.41(1x). Undercover agents of the Racine County Metropolitan Drug Enforcement Unit (drug unit) attempted to purchase cocaine from Dennis Natale. The jury found that Ray combined with Natale to deliver cocaine for this purchase. We affirm the judgment except for sentencing. We remand with directions to the trial court to resentence Ray. The facts will be stated where relevant.[1]

---

[1]Ray does not clearly state whether his postconviction motion was pursuant to sec. 809.30, Stats., or sec. 974.06, Stats. The trial court followed the policy to liberally construe a prisoner's *pro se* complaints, *see State ex rel. Terry v. Traeger,* 60 Wis. 2d 490, 496, 211 N.W.2d 4, 8 (1973), and treated his motion as one under sec. 974.06. However, the trial court considered issues which are not reviewable under sec. 974.06. Ray's appeal includes the trial court's decision on those issues. Because of the ambiguity in Ray's papers, the extent of review given by the trial court, and the state's failure to protest review of these issues, we will review the same issues the trial court addressed.

## I. Sufficiency of the Evidence

Ray argues that the evidence was insufficient to prove that a conspiracy existed between Natale and Ray. We disagree.

The standard of review for sufficiency of the evidence to support a conviction is the same in either a direct or circumstantial evidence case. *State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990).

> [A]n appellate court may not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

*Id.*

Conspiracy is committed by one who, "with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime . . . if one or more of the parties to the conspiracy does an act to effect its object. . . ." Section 939.31, Stats.

The evidence, when viewed most favorably to the state and the conviction, is sufficient to support the jury's finding. Natale worked as a cook at a restaurant in Racine. On February 10, 1989, Officer Stannis of the drug unit and John Malone, an informant, met with Natale at the restaurant to purchase cocaine. They were unsuccessful.

On February 13, 1989, Ray and his eight-year-old daughter stopped at the restaurant for lunch. Natale was working. Natale and Ray were acquaintances for several years. Both Ray and his daughter testified that during lunch Natale indicated to Ray that Natale had a friend

who wanted to buy a gold watch. Natale and Ray decided that the probable weight of a gold watch would be forty grams, and that it would cost approximately $11 per gram. Ray indicated that he would attempt to obtain a gold watch for Natale. Ray said that he would return to the restaurant the next day, February 14.

On February 14, Officer Stannis and Malone returned to the restaurant to purchase cocaine from Natale. Malone was wired to a radio transmitter, and his conversations were being listened to and recorded by the drug unit's surveillance team. After negotiations over quantity and price, Malone gave Natale $600 for the purchase of two eight-balls, or about seven grams, of cocaine. Several times during the attempted purchase Natale indicated to Malone that his source would arrive soon with the cocaine. Officer Stannis and Malone were at the restaurant for a period of two to three hours. At no time did Natale indicate the name of his source.

At one point Malone saw Natale speaking with a person at the rear of the restaurant. He suspected that this was the source for the cocaine. Malone instructed the surveillance team to arrest that person when he left the restaurant.

Ray was arrested moments after he drove away from the restaurant. At the time of the arrest, Ray had $440 of the marked bills in his pockets. Natale had the remaining $160 at the time of his arrest. Ray told the police that the money was a repayment of a debt. No cocaine was found on Ray, on Natale, or at the restaurant. At trial, Ray testified that Natale gave him the money to purchase a gold watch.

A reasonable jury could have and did find beyond a reasonable doubt that Ray and Natale had an agreement to obtain cocaine for delivery to a third party, here

862

Officer Stannis and Malone. The jury could reasonably have found that the discussion between Ray and Natale regarding a "gold watch" was in code and was actually referring to cocaine. A jury could reasonably have concluded that Ray returned to the restaurant on February 14 to pick up the money so that he could obtain the cocaine for Natale to sell to Officer Stannis and Malone.[2] We conclude that the evidence was sufficient to permit the jury to reasonably find that Ray was guilty beyond a reasonable doubt of conspiracy to deliver cocaine.

## II. Co-conspirator's Statements

Ray argues that the trial court improperly admitted testimony into evidence as co-conspirator's statements under sec. 908.01(4)(b)5, Stats. The trial court allowed Malone to testify about several of Natale's statements made during the cocaine negotiations at the restaurant on February 14. These statements included statements about the amount, price and time of delivery. Malone testified to Natale's statements that Natale's source would arrive soon with the cocaine.

██ The trial court's decision to admit co-conspirator testimony is discretionary. *State v. Webster*, 156 Wis. 2d 510, 514-15, 458 N.W.2d 373, 374-75 (Ct. App. 1990). We will affirm the trial court's decision unless the trial court abused its discretion. *Id.* An abuse of discretion will not be found if the record shows that the trial court correctly applied accepted legal standards to the facts of

---

[2]Ray relies throughout his brief on Officer Stannis's and Malone's fear of being "ripped off" by Natale. The officer's and Malone's fears are irrelevant to whether there was sufficient evidence to support a jury finding of a conspiracy.

the record and reached a reasonable conclusion by a demonstrated rational process. *See id.*

In making the discretionary determination the trial court must find a *prima facie* showing of the conspiracy from evidence independent of the statement at issue. *State v. Dorcey,* 103 Wis. 2d 152, 157–58, 307 N.W.2d 612, 615 (1981).[3] The trial court may hear the disputed testimony first, contingent upon a later showing that there was a conspiracy. *Id.* at 158, 307 N.W.2d at 615. If the conspiracy is established, the declarations of one co-conspirator are admissible against the other whether or

---

[3]The state urges this court to adopt a new standard regarding what evidence a trial court may weigh when determining whether an alleged co-conspirator's statements may be admitted as evidence. The rule in Wisconsin is stated in *State v. Dorcey,* 103 Wis. 2d 152, 307 N.W.2d 612 (1981), which requires a *prima facie* showing of proof of the conspiracy *independent* of the hearsay testimony at issue. *Id.* at 158, 307 N.W.2d at 615. By contrast, federal courts also may weigh the hearsay testimony itself, along with other independent testimony, when determining whether there is *prima facie* evidence that the conspiracy existed. *Bourjaily v. United States,* 483 U.S. 171, 176–81 (1987). The state urges this court to hold that *Bourjaily* replaces *Dorcey* and should be the controlling law in Wisconsin. The state argues that *Dorcey* should no longer control because the federal precedence upon which the *Dorcey* court relied, *Glasser v. United States,* 315 U.S. 60 (1942), has been superseded by *Bourjaily,* 483 U.S. at 176–81.

However, it is not necessary to decide this issue. Under *Dorcey,* the trial court in this case was able to find a *prima facie* case of conspiracy from the evidence independent of the co-conspirator's statements. Thus, it is unnecessary for us to determine whether the *Bourjaily* standard should be adopted. *See State v. Webster,* 156 Wis. 2d 510, 515 n.3, 458 N.W.2d 373, 375 (Ct. App. 1990).

not they were made in the presence of the co-conspirator. *Id.*

■

The record shows that the trial court exercised its discretion and that there was a reasonable basis for the trial court's conspiracy determination. Undercover agents went to the restaurant where Natale worked to buy cocaine from him. After prolonged negotiations, the agents gave Natale $600 in marked bills for the purchase of the cocaine. Natale met with Ray at the rear of the restaurant and Natale gave Ray $440 of the marked bills. Ray left the restaurant and was arrested several blocks away with the marked bills on him. Based on the above evidence, the trial court reasonably determined that the state had sufficient evidence to present a *prima facie* showing of the conspiracy.

■

It is necessary for the trial court to determine when the conspiracy began and ended. *Id.* Commencement and termination of a conspiracy cannot be determined by a hard and fast rule and must be determined by the facts of each case. *Id.* The record shows that the trial court in this case was aware of this requirement. Although it did not explicitly state the beginning and ending of the conspiracy, our review of the record shows a basis for the trial court's determination that a conspiracy began and ended. *See State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). Based on the evidence before the trial court, it reasonably could have concluded that Natale and Ray agreed on February 14 to meet to accomplish the purchase of cocaine for their personal profit and that they acted to accomplish their goal when they exchanged money. Thus, the trial court did not abuse its discretion in admitting Malone's testi-

mony regarding Natale's statements made during the cocaine purchase negotiation.

### III. Confrontation Clause

Ray argues that the admission of Natale's statements was a violation of Ray's constitutional right to confront his accusers. *See* U.S. Const. amend. VI; Wis. Const. art. I, sec. 7.[4] The confrontation clause is not to be read literally to eliminate the use of all out-of-court statements in a criminal trial, but instead is to be read to reflect a preference for face-to-face confrontation. *Ohio v. Roberts,* 448 U.S. 56, 63 (1980). In *Roberts,* the Court recognized that "competing interests, if 'closely examined,' may warrant dispensing with confrontation at trial." *Id.* at 64 (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)). Hearsay evidence may be admitted without causing a confrontation problem in some circumstances. *Id.* at 66.

This court held in *Webster* that a statement of a co-conspirator that is not hearsay as provided by sec. 908.01(4)(b)5, Stats., may be admitted into evidence without proof of the declarant's unavailability and without a showing of particular indicia of reliability. *Webster,* 156 Wis. 2d at 522, 458 N.W.2d at 378. As we already have stated, the trial court did not abuse its discretion in determining that Natale's statements were not hearsay under sec. 908.01(4)(b)5. However, the trial court must examine the case for unusual circumstances

---

[4]The confrontation rights under both the federal and state constitutions are identical. *State v. Martinez,* 150 Wis. 2d 62, 75 n.6, 440 N.W.2d 783, 788 (1989).

that would warrant exclusion of the statement. *Webster,* 156 Wis. 2d at 522, 458 N.W.2d at 378.

Ray contends that there were unusual circumstances warranting the exclusion of Malone's testimony of Natale's statements. We conclude that none of these circumstances, separately or combined, warrants the exclusion of Malone's testimony.[5] First, Ray contends that Natale was available for cross-examination but was not called, thus denying Ray the opportunity to cross-examine Natale.[6] In *Webster,* the co-conspirator was available because he was in custody awaiting sentencing. *Id.* at 517 n.6, 458 N.W.2d at 376. The co-conspirator's statements were admitted. The court held that the co-conspirator was not required to be placed on the stand even though he was available. *See id.* at 518–20, 458 N.W.2d at 376–77. *Webster* controls here because Natale was also in custody. His testimony would add "virtually nothing to the truth-determining process." *Id.* at 520, 458 N.W.2d at 377. Furthermore, as in *Webster,* if there was any value in the co-conspirator's presence, Natale's in-custody status made him as available to Ray as to the state. *See id.*

Second, Ray contends that unusual circumstances existed because Natale's statements were critical to the state's case. Co-conspirator's statements are used *because* they are critical. The co-conspirator evidence

---

[5]Ray also states that the trial court created unusual circumstances. The jury sent a note to the trial judge asking why Natale was not called as a witness. The trial judge sent a note back stating that Natale was "unavailable." We do not believe that the trial court's note was prejudicial to Ray.

[6]Natale was being held in the Racine county jail in order to be available to testify. Both sides declined to call him to the stand.

867

rule would be useless if the criticalness of the statement created grounds for unusual circumstances warranting exclusion. Furthermore, Natale's statements were not the only evidence supporting Ray's conviction.

Third, Ray argues that unusual circumstances existed because he was not allowed to testify about Natale's statements made to Ray even though Malone was allowed to testify about different statements made by Natale. After four objections to Ray's testimony about Natale's statements, the parties proceeded to the trial judge's chambers. Ray stated that he was offering the statements to show why Ray came to the restaurant on February 14, the day after Natale inquired about a gold watch. Ray said he could make the point to the jury without Natale's statements. Our review of the record shows that he succeeded in explaining his presence at the restaurant on February 14. Therefore, we do not see unusual circumstances warranting exclusion of Malone's testimony.

Fourth, Ray argues that unusual circumstances existed because Ray was not present during Natale's statements. Ray did not have to be present during Natale's statements. *Dorcey,* 103 Wis. 2d at 158, 307 N.W.2d at 615. Therefore, we conclude that there were no unusual circumstances and that Ray's right to confrontation was not violated.

## IV. Due Process

Ray argues that he was denied due process of law when he did not learn until after the trial that Malone, the key prosecution witness, had a complaint filed against him at the time of Ray's trial for fraud against an innkeeper. Ray also contends that the state made special deals with Malone in return for his testimony in this

case. Ray argues that this was material evidence which would have affected the outcome of the trial because he could have used it to impeach Malone.[7] We disagree.

Malone was paid for introducing undercover officers to drug dealers and for participating in some of the investigations, including that of Natale. While Malone was working for the drug unit, he failed to pay an accrued hotel bill of approximately $1000. The hotel manager complained to the drug unit. Soon thereafter Malone received a check for about $1000 from the drug unit. Officer Stannis then drove Malone to the hotel to pay the bill. Instead, Malone paid the hotel manager only $50. That check bounced.

A complaint was filed June 1, 1989 with the district attorney's office against Malone for fraud on an innkeeper. Malone was given time to work out payment arrangements with the hotel manager to avoid charges. An investigation was made and a report submitted on August 1, 1990. Charges against Malone were not filed until September 13, 1990. The assistant district attorney blamed the workload for the delay in filing charges. Ray's trial took place on August 28, 1989, after the complaint was made but before the charges were filed against Malone. During Ray's trial, the prosecution represented that Malone had "no criminal record." Malone testified that he was paid $220 for his work in the Natale investigation. The balance of his earnings from the drug unit was not disclosed.

---

[7] Ray filed a discovery motion with the state and requested it to "disclose whether any promises, rewards, or inducements of any kind, have been made to any witness by the State, plaintiff, or it's [sic] agents" and to disclose "any information with regard to the informant which would affect his/her credibility."

We conclude that there was not a violation of Ray's due process rights. Due process requires disclosure only of evidence which is both favorable to the accused and material either to guilt or punishment. *State v. Garrity,* 161 Wis. 2d 842, 848, 469 N.W.2d 219, 221 (Ct. App. 1991). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 847–48, 469 N.W.2d at 221. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 848, 469 N.W.2d at 221.

Assuming *arguendo* that the information would have been favorable for impeachment purposes, we conclude that the information was not material. There is not a reasonable probability that disclosure of the information would have changed the result of the trial. First, the critical facts are not in dispute. Officer Stannis and Malone negotiated with Natale to buy cocaine. Natale agreed to sell cocaine to Malone. During the negotiations for cocaine Ray met Natale in the kitchen area of the restaurant. Natale gave Ray $440 of the $600 marked bills. Ray told the police that the money was for a debt Natale owed him, but testified that the money was to purchase a gold watch. A challenge to Malone's credibility would not undermine these facts.

Second, Malone's testimony about the events at the restaurant is supported by the testimony of Officer Stannis, who was present at the restaurant with Malone, and by the transcript of the tape recording from Malone's body wire.[8] Even if Malone's credibility would have been

---

[8]Malone wore a body wire which was monitored and recorded by a surveillance unit. Ray contends that he was denied access to the transcripts of these conversations until after his postconvic-

impeached, his testimony would have been corroborated by Officer Stannis's testimony.

There is not a reasonable probability that the result of the trial would be different had there been disclosure of the pending charges against Malone, or disclosure of the total amount Malone earned from all of his work with the drug unit. Therefore, we conclude that Ray's due process rights were not violated.

## V. Sentencing

### A. Multiple Penalty Enhancers

The trial court sentenced Ray to the five-year maximum imprisonment for conspiracy to deliver cocaine pursuant to sec. 161.41(1)(c), Stats., and sec. 161.41(1x). The trial court doubled the sentence pursuant to sec. 161.48(2), Stats.,[9] a penalty enhancement statute applicable to second or subsequent ch. 161, Stats., violations. The trial court then added five years pursuant to sec. 939.62(1)(b), Stats.,[10] the habitual criminality statute.

tion hearing. However, his defense attorney testified later that both sides had a copy of the transcripts prior to the trial.

[9]Section 161.48(2), Stats., reads in relevant part:

(2) If any person is convicted of a 2nd or subsequent offense under this chapter [the Uniform Controlled Substances Act] that is specified in s. 161.41(1)(c) . . . any applicable minimum and maximum fines and minimum and maximum periods of imprisonment under s. 161.41(1)(c) . . . are doubled. . . .

[10]Section 939.62, Stats., reads in relevant part:

Increased penalty for habitual criminality. (1) If the actor is a repeater . . . and the present conviction is for any crime for which imprisonment may be imposed . . . the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

. . ..
(b) A maximum term of more than one year but not more than

Ray argues that it was improper for the trial court to apply both repeater statutes to his sentence and the state concedes the trial court's sentencing was improper. We agree and remand for resentencing.

The statutes are silent regarding whether both statutes may be applied to the same conviction. Thus, we must engage in statutory construction. The construction of a statute is a question of law which this court considers *de novo. State v. Fouse,* 120 Wis. 2d 471, 476, 355 N.W.2d 366, 369 (Ct. App. 1984). The purpose of statutory construction is to determine and give effect to the legislative intent, which is ascertained by considering the language of the statute in relation to its scope, history, context, subject matter and object intended to be remedied or accomplished. *Id.*

The legislative purpose and scope of sec. 161.48, Stats., is similar to the general criminal law repeater provision of sec. 939.62, Stats. *Olson v. State,* 69 Wis. 2d 605, 608, 230 N.W.2d 634, 636 (1975), *overruled on other grounds, State v. Upchurch,* 101 Wis. 2d 329, 334–35, 305 N.W.2d 57, 60–61 (1981). The purpose of the repeater statutes is to increase the punishment of those persons who do not learn their lesson or profit by the lesser punishment given for their prior violations of the criminal laws, and to serve as a warning to first-time offenders. *Melby v. State,* 70 Wis. 2d 368, 384, 234 N.W.2d 634, 642 (1975). Applying either repeater statute fulfills this legislative purpose. Therefore, absent express legislative intent, we conclude that the legislature's purpose is fulfilled by applying only one of the sections to a second or subsequent offense of a repeater defendant.

10 years may be increased . . . by not more than 6 years if the prior conviction was for a felony.

■■

Statutes must be construed together and harmonized. *State v. Duffy,* 54 Wis. 2d 61, 64, 194 N.W.2d 624, 626 (1972). Ordinarily, a specific statutory provision will prevail over a general provision in the penal code relating to the same subject matter. *Id.* Both sections are penalty enhancers. Section 161.48, Stats., is more specific because it requires both the previous and the current offense to be ch. 161, Stats., violations. Section 939.62, Stats., however, is more general because it applies when there is any kind of prior violation of the criminal code for which imprisonment may be imposed.

Chapter 161, Stats., is Wisconsin's adoption of the Uniform Controlled Substances Act. Section 161.48, Stats., is substantially the same as the corresponding section in the uniform act. Our interpretation of the two statutes at issue is consistent with other jurisdictions that have dealt with this issue. Those jurisdictions have held that both enhancement statutes may not be applied together for one conviction. *See, e.g., Stokes v. State,* 555 So. 2d 254, 255–56 (Ala. Crim. App. 1989); *People v. Edmonds,* 285 N.W.2d 802, 805 (Mich. Ct. App. 1979); *State v. Heyward,* 568 P.2d 616, 617–18 (N.M. Ct. App. 1977); *Jones v. State,* 789 P.2d 245, 247 (Okla. Crim. App. 1990).

■■

Therefore, we hold that where both the previous and the current offenses are under ch. 161, Stats., the trial court may apply *either* the more specific sec. 161.48, Stats., or the more general sec. 939.62, Stats., to the defendant's conviction. Because the trial court in this case applied *both* sec. 161.48 and sec. 939.62 in determining Ray's sentence, we reverse the order denying sentence modification and remand with directions for resentencing.

The state requests this court to modify the sentence by decreasing the sentence by five years—the amount added under sec. 939.62, Stats. This court is not in the position to modify the sentence because the trial court, based on its discretion, did not give the full enhancement penalty. The trial court is inclined to give Ray less than the maximum enhancement. The trial court may apply either the doubling in sec. 161.48(2), Stats., or the six-year maximum sentence in sec. 939.62. Public policy strongly disfavors appellate interference with the trial court's sentencing discretion. *State v. Haskins,* 139 Wis. 2d 257, 268, 407 N.W.2d 309, 314 (Ct. App. 1987). Therefore, this court is not in a position to modify the sentence and we remand for resentencing.

### B. Sentencing Factors

Ray argues that the trial court abused its discretion in sentencing by giving improper weight to several factors. Ray contends that the court gave him a harsher sentence for exercising his right to a trial by jury, for having his daughter testify on his behalf, and for being employed in a job which provides access to schools. It is unnecessary to decide this issue, however, because this case is being remanded on other grounds for resentencing.

### VI. New Trial

Ray argues that in the interest of justice he should be granted a new trial. The exercise of our discretionary power to grant a new trial is to be done infrequently and judiciously. *See Garcia v. State,* 73 Wis. 2d 651, 655, 245 N.W.2d 654, 656 (1976). Under sec. 752.35, Stats., a new

874

trial may be ordered for one of two reasons: (1) whenever the real controversy has not been fully tried, or (2) whenever it is probable that justice has for any reason miscarried. *Vollmer v. Luety,* 156 Wis. 2d 1, 16–17, 456 N.W.2d 797, 804 (1990). This case is not one where the real controversy was not tried. We are not convinced that there was a probable miscarriage of justice and that the result would be different on retrial. Thus, we decline to grant a new trial.[11]

*By the Court.*—Judgment affirmed; order affirmed in part, reversed in part and cause remanded with directions.

---

[11]Ray also argues that he was denied his right to counsel. As we have stated earlier, the trial court understood the motion as one under sec. 974.06, Stats. Ray does not have a right to appointed counsel for a sec. 974.06 motion. *See State v. Alston,* 92 Wis. 2d 893, 895, 288 N.W.2d 866, 867 (Ct. App. 1979).