COURT OF APPEALS
DECISION
DATED AND FILED

July 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP190-CR**

Cir. Ct. No. 2017CF362

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

PLACIDO A. FLORES, JR.,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Placido A. Flores, Jr., appeals from a judgment of conviction and an order denying his postconviction motion.   He contends that (1) his trial counsel was ineffective, (2) the circuit court erroneously exercised its discretion in denying his motion for a mistrial, and (3) he is entitled to a new trial in the interest of justice.   We reject Flores' arguments and affirm.

¶2      In 2017, Flores was charged with incest of his daughter, E.G., first-degree sexual assault of E.G., who was under the age of twelve, and repeated acts of sexual assault of E.G.   In addition, based on his efforts to get E.G.'s mother to tell authorities that she lied about E.G.'s report of sexual assault, Flores was charged with attempt to threaten injury or accuse another of a crime, solicitation to commit identity theft, and solicitation to obstruct justice.

¶3      The matter proceeded to trial.   During its case-in-chief, the State called H.L. as a witness.   H.L. had dated Flores and knew E.G.   On cross-examination, H.L. admitted that she did not have any actual knowledge of what occurred between Flores and E.G.   When Flores' counsel asked H.L. why she deposited $20 in Flores' jail account, H.L. replied:

> A:      Because I loved that man.  I did.  I loved that man.
> I didn't want to believe any of this was actually true, but it
> is true.
>
> Q:      How do you know it's true?
>
> A:      Because … why would [E.G.] say stuff like this?
> Why would I feel so wrong about something and then
> [E.G.] say it?

¶4      Later, Flores' counsel and H.L. revisited the subject in the following exchange:

2

Q:      Okay.  So I just want to go back to why you would put the $20 on his books if you are saying you knew that he did this and, you know, he is a horrible person?

A:      Because I talked to one of his friends, and they were getting in my head about it.  They were trying to make me feel bad about this situation, okay, but there is no changing this situation.  There is no changing what has happened.

Q:      But you don't know what happened, do you?

A:      *[E.G.] wouldn't lie*.

Q:      Are you a trained --

A:      I am not a trained --

Q:      -- interviewer?

A:      -- interviewer, but *[E.G.] would not lie about this*.

Q:      How long do you know -- how long have you known [E.G.]?

A:      I did not know her very long, but *there is no reason a six-year old little girl would lie about something like this*.

(Emphasis added.)

¶5      The State also called E.G.'s mother, M.G., as a witness.  During cross-examination, M.G. acknowledged that she did not go to the police when E.G. first disclosed Flores' sexual assault.  When Flores' counsel asked why, M.G. replied, "Because I didn't know … if I should believe her, and I asked him, and I never seen anything like going on between, you know, [Flores] and my daughter, and that was his only girl, so I didn't think he would do something like that."

¶6      M.G. conceded that she allowed Flores to watch her children because she did not believe E.G.  The prosecutor objected on relevancy grounds. The circuit court observed:

It's relevant as to the reason for the witness's behavior, although her conclusion as to the truth of the accusations is really irrelevant to the jury. It explains why she states she acted as she did, but it doesn't prove truth or falsity of any claims that have been made. Does that make sense?

M.G. then stated, "No, I didn't believe [E.G.] because I felt like she was lying because I don't see why he would do that to her when that is his only daughter, so yes, I didn't believe her."

¶7     On redirect examination, the prosecutor picked up this topic in the following exchange with M.G.:

Q:     Has your opinion about whether these charges happened or not changed since you said you didn't believe her?

A:     After I talked to my mom and seen there was a change in her, *I know something must have happened because she is not the same little girl that I know*.

(Emphasis added.)

¶8     At no time in response to the above highlighted testimony from H.L and M.G. did Flores' counsel object or move for a mistrial.

¶9     Shortly thereafter, during recross of M.G., the following exchange took place between her and Flores' counsel:

Q:     You stated that Mr. Flores was not working at the time, correct?

A:     Yes.

Q:     But are you aware that he had quit his job to watch the kids; is that correct?

A:     No.

Q:     No. Had he been employed previously?

A:     Yes.

> Q:      When did that employment end?
>
> A:      I don't recall.  I don't know.  I don't recall.
>
> Q:      And then shortly after that employment ended, he started watching the kids; is that correct?
>
> A:      I remember [him] telling me that he was going to quit his job because ***drugs was more easier***.  That is why he quit his job, to be honest.

(Emphasis added.)

¶10    This time, Flores' counsel objected and asked to be heard outside the presence of the jury.  Counsel argued that such testimony resulted in the "contamination of this case."  Counsel further argued that a curative instruction would be an insufficient remedy and moved for a mistrial.

¶11    The circuit court denied the motion for a mistrial.  It instructed the jury to disregard the last question and answer.  It also informed them of the parties' stipulation that "there is nothing in the defendant's history with the courts for dealing in controlled substances, illegal drugs, and there is no history in the criminal courts of any sex abuses, sex offenses having been committed."

¶12    Ultimately, the jury found Flores guilty on all counts.  The circuit court imposed an aggregate sentence of twenty-five years of initial confinement and eight years of extended supervision.  It also ordered a consecutive term of probation.

¶13    Flores filed a postconviction motion seeking a new trial.  In it, he complained that his trial counsel was ineffective for failing to object and move for a mistrial due to H.L.'s and M.G.'s testimony that E.G. was telling the truth.  After a hearing on the matter, the circuit court denied the motion.  This appeal follows.

¶14    On appeal, Flores renews his claim of ineffective assistance of counsel. A defendant alleging ineffective assistance of counsel must show both that counsel's performance was deficient and that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶15    The ineffective assistance claim arises out of Flores' counsel's failure to invoke, by objection, the rule that a witness may not testify "that another mentally and physically competent witness is telling the truth." *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984). The credibility of a witness is ordinarily a jury determination. *Id.*

¶16    To determine whether testimony violates the *Haseltine* rule, we examine its purpose and effect. *State v. Tutlewski*, 231 Wis. 2d 379, 388, 605 N.W.2d 561 (Ct. App. 1999). This presents a question of law that we review de novo. *See State v. Davis*, 199 Wis. 2d 513, 519, 545 N.W.2d 244 (Ct. App. 1996).

¶17    Here, we are not persuaded that H.L.'s testimony violated the *Haseltine* rule. Her assertions that E.G. would not lie was elicited in response to questioning *by Flores' counsel* about why she put money in Flores' jail account after he was charged. Flores' counsel obviously raised the point concerning the jail account to suggest that H.L. did not believe E.G.'s allegations. H.L. testified otherwise and explained her seemingly incongruous actions. When viewed in context, we cannot say that the purpose and effect of her testimony was to attest to E.G.'s truthfulness at trial. To the contrary, it was elicited by Flores in an attempt to use H.L. as a witness discrediting E.G. Though that purpose was thwarted by H.L.'s actual testimony, any objection to that testimony on *Haseltine* grounds would have been properly overruled.

6

¶18    We are also not persuaded that M.G.'s testimony violated the *Haseltine* rule. Like the case with H.L., M.G.'s belief in E.G. was put into play at trial by Flores' counsel in order to discredit E.G. Specifically, Flores' counsel elicited testimony that M.G. did not originally believe E.G.'s report of sexual assault. The prosecutor, in fact, objected to this testimony, and the objection was overruled. Then on redirect the prosecutor asked if that opinion had changed, and M.G. confirmed that it had, explaining that "something must have happened" based on a change she observed in E.G. By giving this answer, M.G. was explaining the evolution in her own thinking and behavior, which was initially raised by Flores' counsel to bolster the case that E.G. was not truthful. She was not improperly commenting on E.G.'s credibility as a witness. In any event, as the party who sought to elicit such testimony, once again Flores was in no position to object under *Haseltine* once the testimony on this point became unfavorable on re-direct.

¶19    Because we conclude that the testimony of H.L. and M.G. did not violate the *Haseltine* rule, Flores' counsel was not deficient for failing to object and move for a mistrial. *See State v. Elm*, 201 Wis. 2d 452, 462-63, 549 N.W.2d 471 (Ct. App. 1996). Therefore, we reject Flores' claim of ineffective assistance of counsel.

¶20    Flores next contends that the circuit court erroneously exercised its discretion in denying his motion for a mistrial. He maintains that a mistrial was necessary due to M.G.'s testimony that Flores quit his job because "drugs was more easier."

¶21    The decision to grant a mistrial rests within the circuit court's sound discretion. *State v. Sigarroa*, 2004 WI App 16, ¶24, 269 Wis. 2d 234, 674

N.W.2d 894. The court "must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial." *Id.* Not every error warrants a mistrial, and "the law prefers less drastic alternatives, if available and practical." *State v. Adams*, 221 Wis. 2d 1, 17, 584 N.W.2d 695 (Ct. App. 1998) (citation omitted).

¶22 Upon review of the record, we are satisfied that the circuit court properly exercised its discretion in addressing M.G.'s testimony. As noted by the State, M.G.'s singular comment occurred in the course of a multiday trial. Moreover, the jury was already aware of Flores' drug use from other admitted evidence.[1] Given these facts, the court reasonably determined that a mistrial was not warranted and that less drastic alternatives, including instructing the jury to disregard the testimony and informing them of the parties' stipulation about Flores' criminal history, cured any potential prejudice.

¶23 Finally, Flores asserts that he is entitled to a new trial in the interest of justice. He asks for this relief pursuant to Wis. Stat. § 752.35 (2017-18),[2] which allows this court to reverse a judgment "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried."

¶24 We exercise our discretionary power to grant a new trial infrequently and judiciously. *State v. Ray*, 166 Wis. 2d 855, 874, 481 N.W.2d 288 (Ct. App.

---

[1] For example, Flores testified that he was using drugs and explained that his letters to M.G. from jail were an attempt to apologize for choosing his "friends, drinking, [and] drugs" over her and their children. M.G. also testified that she had concerns about Flores taking custody of their son because of the presence of drugs around his house.

[2] All references to the Wisconsin Statutes are to the 2017-18 version.

1992).  We have already determined that no error occurred as to the issues raised by Flores on appeal.  We are not convinced that the real controversy was not fully tried or that justice miscarried.  As a result, we decline to order a new trial pursuant to WIS. STAT. § 752.35.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.