COURT OF APPEALS
DECISION
DATED AND FILED

December 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1336-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF664

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DAVID L. MORALES,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. David L. Morales appeals from a judgment convicting him after a jury trial of second-degree sexual assault. He also appeals from an order denying his postconviction motion for relief. Morales contends that (1) the circuit court erred in admitting other acts evidence against him; (2) he received ineffective assistance of counsel; and (3) he is entitled to a new trial in the interest of justice. We reject his arguments and affirm.

¶2 In October 2018, the State charged Morales with second-degree sexual assault of K.C. It accused Morales of having sexual contact with K.C. while she was sleeping at his family's residence. K.C. was a friend of Morales' sister, S.M., and had been over to the residence to visit S.M. and some other friends. K.C. had fallen asleep in the bedroom of Morales' and S.M.'s younger brother[1] and awoke to find Morales with his hand in her pants, touching her vagina.

¶3 Before trial, the State moved to introduce other acts evidence against Morales. The first act was his juvenile adjudication for sexually assaulting S.M. while she was sleeping. The adjudication occurred in 2016, but the actions underlying it took place in 2013 or 2014. The second act was a Snapchat photo that Morales allegedly took of S.M. while she was sleeping, showing her pants pulled down. That act purportedly occurred in September 2018.

¶4 The circuit court held a hearing on the State's motion. After conducting a brief analysis under *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), the court granted the State's request to admit evidence of Morales'

---

[1] The younger brother was not in his bedroom at the time; rather, he was sleeping in his parents' bedroom.

juvenile adjudication. However, it did not specifically rule on or analyze the evidence of the Snapchat photo.

¶5 At trial, evidence of Morales' juvenile adjudication was brought in through the testimony of S.M. and a detective who interviewed Morales at the time. Evidence of the Snapchat photo was more limited. S.M. recalled someone sending her the photo prior to K.C.'s alleged assault. However, no photo was introduced, and S.M. did not testify that she knew Morales either took or sent the photo. She just noted that her pants were pulled down in the photo, "and that's what [Morales] used to do."

¶6 In addition to the above evidence, the jury heard from K.C., who recounted the assault and Morales' incriminating statements thereafter. K.C. testified that, upon waking, Morales repeatedly apologized to her. When she began striking him in anger, he replied, "I deserve this." K.C. later overheard Morales tell his dad that he was a "bad kid" and that "there was something wrong with him."

¶7 The jury also heard evidence of other statements made by Morales after the fact. For instance, S.M. testified that she heard Morales telling their dad that he was sorry. S.M.'s boyfriend, meanwhile, testified that he overheard Morales tell his younger brother that Morales had "succumbed to the pressure" and touched K.C.'s vagina. The State also introduced Morales' own statements via recorded jail phone calls. In them, Morales told his dad that what happened was his fault.

¶8 Ultimately, the jury found Morales guilty of the charged offense. The circuit court imposed a sentence of eight years of initial confinement and fifteen years of extended supervision.

¶9      Morales subsequently filed a postconviction motion for relief. In it, he argued that the circuit court erred in admitting the other acts evidence against him. He also alleged multiple claims of ineffective assistance of counsel. Finally, Morales maintained that he was entitled to a new trial in the interest of justice.

¶10     The circuit court held a hearing on Morales' motion. The court conceded that it had "made several misstatements of fact" when discussing the similarities between Morales' juvenile adjudication and the charged offense in its pretrial analysis.[2] Likewise, it recognized that it was "negligent" in not ruling on or analyzing the evidence of the Snapchat photo. Accordingly, the court conducted another *Sullivan* analysis and determined that the other acts evidence was properly admitted. It then rejected Morales' claims of ineffective assistance of counsel and denied his request for a new trial in the interest of justice. This appeal follows. Additional facts are set forth below.

¶11     On appeal, Morales first contends that the circuit court erred in admitting the other acts evidence against him. He disputes that the acts satisfy the *Sullivan* analysis.

¶12     In *Sullivan*, our supreme court set forth a three-step analytical framework for courts to follow when determining the admissibility of other acts evidence. Specifically, courts must consider: (1) whether the evidence is offered

---

[2] In its pretrial analysis, the circuit court said, "Both cases involved vaginal penetration. Both cases involved a family member. And both cases involve – they're not very remote in time, one offense happening in 2016 and the other in 2018." As noted by Morales, there was no vaginal penetration in this case, and K.C. was not a family member. Furthermore, the actions underlying the juvenile adjudication took place in 2013 or 2014, not 2016.

for a permissible purpose under WIS. STAT. § 904.04(2) (2021-22),[3] such as to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; (2) whether it is relevant under WIS. STAT. § 904.01; and (3) whether its probative value is substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. *Sullivan,* 216 Wis. 2d at 772–73.

¶13　Alongside this framework is the greater latitude rule. Greater latitude is a "longstanding principle that in sexual assault cases ... courts permit a 'greater latitude of proof as to other like occurrences.'" *State v. Davidson*, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (citation omitted). This rule is codified in WIS. STAT. § 904.04(2)(b)1 and is applicable where, as in this case, the charge involves a "serious sex offense." *State v. Dorsey*, 2018 WI 10, ¶¶31–33, 379 Wis. 2d 386, 906 N.W.2d 158. The rule applies to each step of the *Sullivan* analysis. *State v. Marinez*, 2011 WI 12, ¶20, 331 Wis. 2d 568, 797 N.W.2d 399.

¶14　We review a circuit court's decision to admit other acts evidence for an erroneous exercise of discretion. *State v. Griffin*, 2019 WI App 49, ¶19, 388 Wis. 2d 581, 933 N.W.2d 681. We generally look for reasons to sustain discretionary decisions and may, when necessary, search the record to determine if it supports the court's decision. *See State v. Lock*, 2012 WI App 99, ¶43, 344 Wis. 2d 166, 823 N.W.2d 378.

¶15　As noted, the circuit court conducted a *Sullivan* analysis of the other acts evidence at the hearing on Morales' postconviction motion. With respect to

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

the evidence of the juvenile adjudication, the court found that it was offered for a permissible purpose, such as motive, intent, opportunity, and lack of mistake. The court further found that the evidence was relevant as it related to a fact of consequence (i.e., K.C.'s credibility) and made the fact more likely due to similarities with the charged offense. In discussing the similarities, the court observed:

> [B]oth acts involve vaginal touching ….
>
> [B]oth occurred in a private setting where only the victim and the defendant were present. Both victims were in rooms alone. Both victims were sleeping. Both offenses occurred at the defendant's home. Both victims were very close in age having both been born, I believe, in 1998. Both victims were also close in age to the defendant at the time of the assault. S.M. was between 14 and 15 years old when the defendant was 13 to 14, and K.C. was 20 years old at the time of the assault while the defendant was 19. Both assaults involve unwanted contact without consent because both victims were asleep at the time of contact. Both were crimes of opportunity. The defendant had access to the victims who were sleeping in his home.

Finally, the court concluded that, with the cautionary instruction it gave the jury,[4] the probative value of the evidence was not outweighed by the danger of unfair prejudice.

¶16    With respect to the evidence of the Snapchat photo, the circuit court again found that it was offered for a permissible purpose—the same purposes previously mentioned, particularly because it showed Morales "is attracted [to]

---

[4] At trial, the circuit court gave a jury instruction on the evidence of Morales' juvenile adjudication. It explained the limited purposes of the evidence and reminded the jury that the evidence was "not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged."

and gets sexual gratification from unconscious females." Likewise, the court found that the evidence was relevant as it related to facts of consequence (i.e., K.C.'s credibility and the absence of mistake or accident) and made the facts more likely due to similarities with the charged offense. In discussing the similarities, the court explained:

> The incidents occurred very close in time, I believe within a few weeks of each other. Both incidents involve a female the same age. They both occurred in bedrooms the victim was alone in. They both involve the victim who was asleep. They both occurred at the defendant's home. They both involved unwanted conduct without consent. They were both crimes of opportunity.

In assessing the final step of the *Sullivan* framework, the court acknowledged that the actual evidence of the Snapchat photo was more limited than suggested by the State's pretrial motion.[5] Because of this, the court did not believe the evidence was unfairly prejudicial.

¶17 On this record, and in light of the greater latitude rule, we are satisfied that the other acts evidence was properly admitted. The acts were sufficiently similar to the charged offense to be probative of intent and the absence of mistake or accident, which are legitimate purposes and went to the heart of Morales' defense at trial.[6] Given the similarities, the acts were not too remote in

---

[5] The State's pretrial motion indicated that S.M. saw it was Morales who had taken the photo of her.

[6] Morales' defense was that he mistook K.C. for his younger brother and had touched her vaginal area while intending "to pick up, to scoop up" his brother and move him to a quieter part of the house—away from S.M. and her friends, who were being loud.

time to be introduced.[7]  Furthermore, the acts were not unfairly prejudicial for the reasons cited by the circuit court.

¶18     Morales next contends that he received ineffective assistance of counsel.  Specifically, he faults counsel for:  (1) failing to point out factual errors in the circuit court's pretrial analysis of the juvenile adjudication evidence; (2) failing to object to evidence of the Snapchat photo on grounds that no photo was introduced and the court did not rule on or analyze the evidence's admissibility before trial; (3) failing to request a cautionary instruction with regard to evidence of the Snapchat photo; and (4) failing to object to statements and testimony that went beyond the scope of the court's other acts ruling.[8]

¶19     A defendant who asserts ineffective of counsel must show both that counsel's performance was deficient and that such performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To show deficient performance, the defendant must point to specific acts or omissions by counsel that were "outside the wide range of professionally competent assistance."  *Id.* at 690.  To show prejudice, the defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have

---

[7] Although the actions underlying the juvenile adjudication took place four to five years earlier, courts have held that the passage of far more time was insignificant.  *See, e.g.*, *State v. Hurley*, 2015 WI 35, ¶85, 361 Wis. 2d 529, 861 N.W.2d 174; *State v. Davidson*, 2000 WI 91, ¶¶6, 10, 72, 236 Wis. 2d 537, 613 N.W.2d 606.

[8] For example, S.M. testified about how Morales' actions impacted her and the steps her parents took to prevent another sexual assault from occurring.  She also alluded to an additional incident involving her younger sister that was not discussed in the juvenile adjudication.  Likewise, the detective who interviewed Morales when he was a juvenile testified about two instances that involved Morales staring at his sisters while they slept.

been different. *Id.* at 694. We need not address both components of the analysis if the defendant fails to make a sufficient showing on either one. *Id.* at 697.

¶20 Our review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). We will not disturb the circuit court's findings of fact unless they are clearly erroneous, but the ultimate determination of whether counsel's performance fell below the constitutional minimum is a question of law we review independently. *See id.* at 634.

¶21 Here, Morales' complaints about counsel largely involve the other acts evidence, which we have already determined was properly admitted. To the extent that counsel could have done more to blunt the evidence's impact or object to extraneous statements and testimony, we are not persuaded that Morales has shown that he was prejudiced as a result. Again, Morales' defense at trial was that his touching of K.C. was a mistake or accident. That defense was completely undercut by Morales' statements to others afterward—whether it be repeatedly apologizing for his conduct, admitting that he was a "bad kid," admitting that "there was something wrong with him," or admitting that he had "succumbed to the pressure" and touched K.C.'s vagina. In view of this evidence, there is not a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

¶22 Finally, Morales contends that he is entitled to a new trial in the interest of justice. He asks for this relief pursuant to WIS. STAT. § 752.35, which allows this court to reverse a judgment "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried[.]"

¶23    We exercise our discretionary power to grant a new trial infrequently and judiciously. *State v. Ray*, 166 Wis. 2d 855, 874, 481 N.W.2d 288 (Ct. App. 1992). We have already determined that Morales is not entitled to relief as to the issues discussed above. We are not convinced that the real controversy was not fully tried or that justice miscarried. Therefore, we decline to order a new trial pursuant to WIS. STAT. § 752.35.[9]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] To the extent we have not addressed an argument on appeal, the argument is deemed rejected. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).