STATE of Wisconsin, Plaintiff-Respondent,†

v.

Kurt RUNDLE, Defendant-Appellant.

Court of Appeals

*No. 91-1971-CR. Submitted on briefs June 16, 1992.—Decided July 29, 1992.*

(Also reported in 488 N.W.2d 125.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Peter J. Kovac* of *Kovac Law Offices* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

SNYDER, J.   A jury found Kurt Rundle guilty of being a party to the crimes of intentional and reckless physical abuse of his young daughter, contrary to secs. 939.05, 948.03(2)(b) and 948.03(3)(a), Stats. He was not charged under the "passive abuse" statute, sec. 948.03(4). We reverse his conviction because while the

evidence may show that he was passively involved in the abuse, it is insufficient to establish his guilt as a party to the crimes as charged. Because we reverse on that issue, we do not address his other issues.

In August 1989, Rundle's three-year-old daughter was admitted to a hospital, comatose and brain-damaged. Her life-threatening injuries were consistent with "Shaken Baby Syndrome." She also had numerous bruises and scratches in various stages of healing, and a bruise suggestive of having been whipped with a cord. She now is blind, and severely and permanently disabled.

The ensuing investigation led to criminal charges against Rundle and his wife, Pamela. In addition to the 1989 incident, the complaint also alleged abuse stemming from injuries the child sustained in 1986 and 1988.[1] Kurt alone faced charges arising from the 1986 incident; Pamela alone was charged with the 1988 injuries. Regarding the final incident in 1989, Kurt and Pamela each were charged with two counts of being party to the crime of physical abuse of a child, contrary to secs. 939.05, 948.03(2)(b) and 948.03(3)(a), Stats. Kurt and Pamela were tried together. Kurt was acquitted of the 1986 charges and found guilty of the 1989 charges.[2] We address only Kurt's appeal from the conviction on the 1989 charges. More facts will be stated where necessary.

---

[1] In 1986, when she was seven weeks old, the child was hospitalized with a skull fracture and symptoms of "Shaken Baby Syndrome." She was placed in protective custody for several months and was returned to the home after her parents completed parenting classes. In 1988, she again was removed from the home after suffering injuries indicative of abuse but was returned to the Rundle home six or seven months later.

[2] Pamela was found guilty of both the 1988 and 1989 charges. This court affirmed Pamela's conviction. *State v. Rundle,* 166 Wis. 2d 715, 480 N.W.2d 518 (Ct. App. 1992).

The charges leading to Kurt's convictions allege that he was a party to the crime of child abuse because he aided and abetted Pamela's abuse of the child. The state proceeded, however, on the theory of passive culpability, arguing that even if Kurt himself did not strike or shake the child, he nonetheless could be held liable for failing to intervene when Pamela abused her.

The state's reliance upon a passive culpability theory is illustrated by the prosecutor's repeated references to Kurt's involvement as only a bystander to the abuse. For example, the prosecutor stated that "[t]he point . . . is that the jury doesn't have to find that Kurt Rundle raised a single hand in striking or shaking [the child]," and "[t]his case won't answer what motivates a parent to sit back and do nothing to stop the physical abuse that they see being inflicted by the other parent on their child." Typifying the state's theory are the following excerpts from the prosecutor's closing argument:

> [I]f Kurt Rundle didn't strike the blows, didn't shake [the child], he certainly knew that it was going on . . .. He knew what happened. He did nothing to stop it. . .. Kurt Rundle . . . sat back and let his wife Pam beat that child for three years . . .. [H]ow much more did his lack of taking part and stopping what was going on and preventing that from being repeated ultimately result in what happened to [the child]?
>
> . . ..
>
> How could Kurt Rundle be innocent of any unlawful intent when he stood back and let this go on and on and on . . .. And Kurt Rundle, if he didn't cause these injuries himself to [the child] in 1989, aided and abetted his wife in covering them up afterwards.
>
> . . ..

He abdicated his entire parental responsibility . . .. And when Pam and Kurt's friends would tell Kurt, stop [Pamela], what she's doing is wrong, he did nothing.

[Kurt's defense counsel] suggests to you that that doesn't make him a [sic] criminally responsible. Ladies and gentlemen, if [the child] were standing out in the middle of the street with a semi coming down on her and Kurt Rundle could come out there and pick her up and pull her off the street before that semi did hit her, and he didn't do that, wouldn't he be responsible for her injuries?

And when Pam repeatedly shook that child, beat that child, and struck that child, and he sat by and did nothing, is that conduct any different?

. . ..

[T]his child had these terrible injuries as a direct result of these defendants' conduct. Pam shaking. Her beating. And Kurt's inactivity. Not stopping it. Aiding and abetting in covering up with a lie.

The state argues that its position is supported by *State v. Williquette,* 129 Wis. 2d 239, 385 N.W.2d 145 (1986). We disagree. *Williquette* did state that a parent, by his or her passive conduct, can be guilty of subjecting a child to child abuse. *Id.* at 242–43, 385 N.W.2d at 147. That case arose, however, under the old child abuse statute, sec. 940.201, Stats. (1985–86), and centered on the construction of the statutory phrase "[w]hoever . . . *subjects* a child to cruel maltreatment." (Emphasis added.) Section 940.201 was repealed by the time of the alleged abuse leading to the 1989 charges.[3]

Current sec. 948.03, Stats., represents a substantial revision and recreation of sec. 940.201, Stats. (1985–86).

[3]Section 940.201, Stats. (1985–86), was repealed effective July 1, 1989. *See* secs. 28 and 66a, 1987 Wis. Act 332. The child's injuries were inflicted between July 24 and August 6, 1989.

Section 948.03(4) is the statutory embodiment of the *Williquette* holding. It provides in part:

> **(4)** FAILING TO ACT TO PREVENT BODILY HARM.
> (a) A person responsible for the child's welfare is guilty of a Class C felony if that person has knowledge that another person intends to cause, is causing or has intentionally or recklessly caused great bodily harm to the child and is physically and emotionally capable of taking action which will prevent the bodily harm from occurring or being repeated, fails to take that action and the failure to act exposes the child to an unreasonable risk of great bodily harm by the other person or facilitates the great bodily harm to the child that is caused by the other person.

*Id.* In substantially similar language, sub. (b) makes it a Class D felony for permitting bodily harm, rather than great bodily harm, to occur. *Williquette* therefore does not apply here: it construed statutory language with which we are not faced; the statute it construed has been repealed; and its teaching has been codified in a statute with which Kurt was not charged.

The state argues at length that a prosecutor has great latitude in determining how to charge. That is not the issue here. The issue is whether, having chosen to charge Kurt as an aider and abettor, the state proved its case.

■

When the sufficiency of the evidence is challenged, the test is whether this court can conclude that the trier of fact reasonably could be convinced that the defendant was guilty beyond a reasonable doubt. *State v. Lossman,* 118 Wis. 2d 526, 540, 348 N.W.2d 159, 166 (1984). The burden of proof is on the state to prove beyond a reasonable doubt every essential element of the crime charged. *Id.* at 541, 348 N.W.2d at 166. Failure to prove a crime

by sufficient evidence is fatally defective because the defendant convicted on such evidence is denied due process of law. *State v. Crowley,* 143 Wis. 2d 324, 331, 422 N.W.2d 847, 850 (1988).

We conclude that while the evidence might satisfy sec. 948.03(4), Stats., it is insufficient to convict Kurt as an aider and abettor. The elements of aiding and abetting are that the defendant undertook conduct which, as a matter of objective fact, aids another in the execution of a crime, and that he or she desired or intended that the conduct would yield such assistance. *State v. Hecht,* 116 Wis. 2d 605, 620, 342 N.W.2d 721, 729 (1984). Witness after witness testified that Pamela, not Kurt, was the aggressor toward the little girl.[4] The prosecutor did not follow up with questions which may have established that Kurt actually assisted Pamela's abuse or that he desired or intended the repeated maltreatment. Rather, the prosecutor asked only whether Kurt had been observed trying to intervene on the child's behalf. The state thus did not show that Kurt "undertook conduct" or had the requisite intent, but only that he *abstained* from action. The state's failure to recognize that *Williquette*-type actions now must be filed under sec. 948.03(4), Stats., fatally affected its prosecution of Kurt.

*By the Court.*—Judgment and order reversed.

---

[4]Those who did acknowledge seeing Kurt on occasion physically discipline the child stated that it was not in a forceful or injurious manner.